## STATE OF CONNECTICUT *v.* LEONARD BARRETT

SUPERIOR COURT GEOGRAPHICAL AREA No. 13
JUDICIAL DISTRICT OF HARTFORD-NEW BRITAIN FILE No. 52756S

Memorandum filed December 6, 1985

*Patrick Cosgrove,* assistant state's attorney, for the state.

*Furey, Donovan & Heiman,* for the defendant.

MIANO, J. The defendant herein filed a motion to suppress certain items seized pursuant to a search and seizure warrant alleging that the facts contained in the affidavit did not establish sufficient probable cause.

Upon a review of the warrant application for the apartment of the defendant, the court finds the following. Harry Ryan of 16 Latimer Street, Simsbury, went to the police affiants and related his opinion that narcotics activity was taking place on premises he owned at 123 Library Lane, Simsbury. Ryan related the following personal observations at the subject premises: (1) two small plastic bags containing a green plant-like material which looked like alfalfa; (2) numerous cigarettes that were burned down to the very end of the stubs in ash trays; (3) in the bedroom a gun case lying next to the bed; (4) three or five bullets on the head-

board; (5) in another bedroom, on a desk, a large, very elaborate scale about eighteen inches long; and (6) next to the scale was a teaspoon containing white powder that looked like flour. These observations led Ryan to conclude that some type of narcotics activity was being conducted on the subject premises and prompted him to notify the police.

The fourth amendment to the United States constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation . . . ." See also Conn. Const., art. I, § 7. Through the fourteenth amendment to the United States constitution, the federal safeguards of the fourth amendment are made obligatory upon the states. *Ker* v. *California,* 374 U.S. 23, 33–34, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). The proscriptions of the fourth amendment apply to arrest warrants as well as to search warrants. *Aguilar* v. *Texas,* 378 U.S. 108, 112 n.3, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

The principles by which we test the adequacy of an affidavit have been designed to insure that a disinterested judicial officer makes his own common sense judgment that a suspect probably has, or probably has not, been involved in the commission of a crime. *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

As the term probable cause implies, the issue is one of probabilities. These probabilities are not technical. "[T]hey are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879, reh. denied, 338 U.S. 839, 70 S. Ct. 31, 94 L. Ed. 513 (1949).

This standard must be understood to mean that a judicial officer has done all that he should when he has answered for himself the question: "Was this suspect probably involved in criminal activity?" His answer should be paid great deference by reviewing courts; *Jones* v. *United States,* 362 U.S. 257, 270, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960); and "doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

In the defendant's brief, the label of "informant" has been affixed to the person of Harry Ryan, the originator of the information to the police. The common connotation of "informant" is an individual who himself is involved in the criminal milieu and who imparts information to the police authorities for reasons of his own personal interests. It is with this class of persons in mind that the United States Supreme Court enunciated its decisions in *Aguilar* v. *Texas,* supra, and *Spinelli* v. *United States,* supra.

A distinction must be drawn between such a person, an informer from the criminal milieu, and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and who thereafter relates to the police what he knows as a matter of civic duty. One who qualifies in this latter category is often referred to as a "citizen-informer."

The citizen-informer is more deserving of a presumption of reliability than the informant from the criminal milieu. 1 W. LaFave, Search and Seizure (1978) § 3.3, p. 499. This distinction was first noted in a dissent by Justice Harlan wherein he proclaimed that "there is much truth in the Government's supporting assertion that the ordinary citizen who has never before reported a crime to the police may, in fact, be more

reliable than one who supplies information on a regular basis. 'The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals.' " *United States* v. *Harris,* 403 U.S. 573, 599, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) (Harlan, J., dissenting). This distinction between an informant from the criminal milieu and a citizen-informer is found in a recent Connecticut Supreme Court case wherein the court noted that a " 'citizen-informer' . . . is more deserving of belief than the typical informant from a criminal milieu." *State* v. *Daley,* 189 Conn. 717, 723–24, 458 A.2d 1147 (1983). " 'It is generally agreed . . . that a comparable showing is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or a witness.' " Id., 724.

The defendant claims that the circumstances of this case fail to constitute probable cause under both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. Until recently search and seizure issues were analyzed under the principles enunciated in *Spinelli* v. *United States,* supra, and *Aguilar* v. *Texas,* supra. Those principles had been understood to require a reviewing court to gauge the reliability of information given by an *informant* according to a two-pronged test analyzing (1) the basis of the informant's knowledge—the means by which he acquired his information, and (2) the underlying facts establishing his veracity or reliability in the particular case.

In *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), the United States Supreme Court appeared to sound the death knell of the two-pronged analysis of *Aguilar-Spinelli.* New life has been infused into the *Aguilar-Spinelli* test, how-

ever, by the Connecticut Supreme Court which reasserted, in *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), the application of the test under the protections afforded by the constitution of Connecticut, article first, § 7.

Although there is authority to conclude that the *Aguilar-Spinelli* test does not apply to the "citizen-informer" under either the fourth amendment to the United States constitution or article first, § 7, of the Connecticut constitution, this court will utilize this test along with the less strict "totality of circumstances" test of *Illinois* v. *Gates,* supra. This court concludes that there is probable cause to search the subject premises under the analysis of both tests.

In applying the *Aguilar-Spinelli* test this court finds that the affidavit here satisfies the first prong of the analysis, the basis of knowledge, because it discloses that the information furnished by the source, the citizen-informer, was based upon his personal observations. Relevant to the second prong of the analysis, the veracity or reliability of the source of the information, this court finds that Ryan must be classified as a citizen-informer. Given the facts contained in the affidavit it is not reasonable to infer any motive attributable to Ryan other than one of civic duty. Ryan was simply a landlord inspecting his property during which time he made certain observations. The observations led Ryan to conclude that criminal activity was probably afoot. His conclusion is amply supported by the particularization of his observations in the affidavit. It is noteworthy that the citizen-informer was identified in the affidavit. Due to the finding that Ryan is a citizen-informer, he is presumed to be reliable.

Ryan's observations provided a sufficient basis for the magistrate to conclude that probable cause to search did exist. It is true, as the defendant asserts, that the

objects allegedly observed are in and of themselves innocuous. The items allegedly observed by Ryan when considered collectively, however, are sufficient to establish reasonable grounds to conclude that criminal activity is probably taking place and/or that contraband is probably present. All these observations—the green plant-like material in plastic bags, the apparently unconventional looking cigarette stubs in ash trays, the elaborate scale next to a spoon with white powdered residue on it found in the bedroom—and others, are such that in contemporary society, even where the observer is one who is untrained in law enforcement, as here, a person would reasonably conclude that contraband was *probably* on the premises. " '[T]he [probable cause] process does not deal with hard certainties, but with probabilities' " and probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. *State* v. *Kimbro,* supra, 225–26, quoting *Illinois* v. *Gates,* supra, 231–32.

It is most improbable that what appeared to be "flour" was in fact flour under the circumstances of its observation on a spoon in the bedroom near an elaborate, apparently delicate, scale. It is common knowledge also that common types of narcotic substances, cocaine and heroin, are white and powdery. The presence of the elaborate scale with a spoon with white powder on it, both found in the bedroom, provided a sufficient basis for the magistrate to conclude that the suspected narcotics activity was commercial in nature. It is common knowledge in the law enforcement community that narcotics are weighed in the process of being packaged for distribution. Therefore, there was sufficient basis for the magistrate to find probable cause for the seizure of money and records.

From these observations, a citizen, presumptively untrained in the activities of contraband use or dealings, believed that there was criminal activity taking place on his premises. This conclusion of probable criminal activity by the citizen is a higher standard than that which is required. The test is whether ordinary, reasonable men possessed *of the experience and knowledge of these detectives* would conclude that the activity described above was more likely than not a criminal activity. *Draper* v. *United States,* 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959), Ryan's observations " 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *State* v. *Martin,* 2 Conn. App. 605, 613, 482 A.2d 70, cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

In light of the finding of probable cause under the more strict *Aguilar-Spinelli* test, it is not necessary for this court to analyze the allegations under the totality of circumstances test. This court concludes that the affidavit passes muster. It gives objective evidence of a fair probability that proscribed activity was occurring at the premises and that drugs were located there. *State* v. *Abbott,* 5 Conn. App. 441, 446, 499 A.2d 437 (1985).

The motion is denied as pertains to the items seized from the apartment.