## STATE OF CONNECTICUT *v.* ROBERT GARCIA, JR.
## (3405)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 8—decision released May 13, 1986

*Judy Ann Stevens,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from his conviction of unlawful possession of cocaine with intent to sell in violation of General Statutes (Rev. to 1981) § 19-480 (a).[1] The defendant pleaded nolo contendere

---

[1] General Statutes (Rev. to 1981) § 19-480 (a) was subsequently transferred to General Statutes § 21a-277 (a).

to the charge after the trial court denied his motion to suppress evidence seized pursuant to a search warrant. On appeal, the defendant claims: (1) that whether probable cause existed for the issuance of the search warrant should have been measured by a stricter standard than that applied under the fourth amendment totality of the circumstances test; and (2) that the information contained in the warrant was "stale." We find no error.

On July 16, 1981, Troopers Donald A. Taylor and Edwin J. Grohe of the state police department applied for a search and seizure warrant to search the person of the defendant, also known as "Bobby," and the bar and restaurant premises at 1865 Barnum Avenue in Bridgeport, known as "Bobby's." The troopers' supporting affidavit for the warrant included information provided by a confidential informant, known as CI-581 in order to protect his safety and the security of an ongoing investigation. Paragraph three of the affidavit recited the confidential information obtained from the informant, stating that CI-581 had frequented "Bobby's" on numerous occasions since its opening four to six weeks earlier; that the defendant managed "Bobby's"; that CI-581 had known the defendant for a long period of time; that CI-581 had personal knowledge of the defendant's active involvement in the sale of cocaine; that he had observed the defendant at the business establishment "constantly" in possession of cocaine in varying amounts of up to one ounce; that he observed cocaine being "cut" there by the defendant before being distributed; that CI-581 had observed the defendant selling cocaine to persons on the premises as late as the weekend of July 11, 1981; and that the defendant "always" carried a revolver on his person. In addition, the affidavit provided by Taylor and Grohe recited that their commanding officer, Sergeant

Manfred Brideau, on July 15, 1981, contacted a reliable, creditable person who is an established business man within the community, who stated that he has known the defendant for a long period of time and "that he has personal knowledge that Garcia is currently and on a continuous basis selling cocaine within his business establishment, 'Bobby's.' " The affidavit also stated that Brideau, on July 15, 1981, had been informed by federal drug enforcement agent Paul Salute that Salute had received information from a confidential informant that the defendant "has been and is currently, heavily involved in the sale of cocaine in the Bridgeport area."

On the basis of the underlying affidavit, the search and seizure warrant was issued on July 16, 1981, and the defendant was arrested after a search of "Bobby's," and of his person, revealed, among other items, a weapon, ammunition, and thirteen paper packets, each containing what was described in the inventory of items seized as "white powder." In addition, there were seven "baggies" containing "plant-like material."

On March 11, 1983, the defendant moved to suppress the evidence obtained pursuant to the warrant on the ground that "[s]aid warrant was issued on [stale] information; and failed to establish probable cause to believe that the specified evidence was then probably present in the locus of the search." That motion was denied. The court's memorandum of decision briefly concluded: "Read in a common sense manner there are sufficient facts set forth in the affidavit to show continuing criminal activity related to narcotics. The totality of the circumstances set forth in the affidavit furnished the issuing magistrate with probable cause to issue the search warrant in question."

The defendant subsequently withdrew his not guilty plea and entered a conditional plea of nolo contendere

under the provisions of General Statutes § 54-94a.[2] The court accepted the plea and, after a finding of guilty, sentenced the defendant to imprisonment for two years.

The first issue raised by the defendant is that the finding of probable cause for the issuance of the warrant for the search of the defendant and his place of business should have been determined by a stricter standard than the fourth amendment totality of the circumstances test, and that its review by the trial court should have been made by the same measurement. The standard expressed by the trial court in determining whether probable cause existed for the issuance of the search warrant was the so-called "totality of the circumstances" test enunciated earlier that year by the United States Supreme Court in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Our state Supreme Court has recently concluded, however, that the protections afforded under article first, § 7, of the Connecticut constitution are not sufficiently guaranteed by the application of the *Gates* test. *State* v. *Kimbro,* 197 Conn. 219, 236, 496 A.2d 498 (1985). Rather, the court there held that our state constitution requires us to apply the pre-*Gates* standard established by *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509,

---

[2] General Statutes § 54-94a provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). We hold, therefore, as claimed by the defendant, that it is the test enunciated by *Aguilar-Spinelli* and their progeny by which we must measure whether probable cause existed for the issuance of the search warrant. *Kimbro,* therefore, having resurrected *Aguilar-Spinelli* from the ashes of oblivion like a phoenix, is our guide in testing the defendant's ultimate claim of error.

It is the defendant's contention that under *Aguilar-Spinelli,* the search warrant was not issued on sufficient probable cause because the information contained in the application was stale, and, therefore, did not justify the belief that narcotics related evidence would be found on the person and at the place to be searched when the warrant was issued. We disagree.

The *Aguilar-Spinelli* test for reviewing probable cause is based on an analysis of two key factors: "(1) the basis of the informant's knowledge—the means by which he acquired his information, and (2) the underlying facts establishing either his general veracity or his reliability in the particular case." *State* v. *Martin,* 2 Conn. App. 605, 610, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, *Connecticut* v. *Martin,* 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). The defendant's attack upon the warrant in this case is based upon the second prong of the *Aguilar-Spinelli* test, the reliability of the information upon which the warrant was issued. See *State* v. *Rose,* 168 Conn. 623, 631–32, 362 A.2d 813 (1975). "While there is no fixed test for finding the existence of probable cause, proof of its existence must include facts so closely related to the time of the issuance of the warrant as to justify a finding of the existence of probable cause at that time." Id., 631. "The basic criterion as to the duration of probable cause is the inherent nature of the crime." Id., 631–32.

In the present case, confidential informant CI-581, whose reliability had been established by past information which had led to at least ten arrests with four convictions and pending court dispositions on narcotics related charges, told the two affiants, on the day before their application for and the issuance of the search warrant, that "Garcia has been actively involved in the sale of cocaine and [that he] has observed Garcia *constantly* in possession of cocaine at the business establishment, 'Bobby's.' " (Emphasis added.) Further, he told them that "[a]s late as the weekend of July 11, 1981, [he had observed] Garcia selling cocaine to persons within 'Bobby's.' " This observation was made five days or less before the warrant was issued. Additionally, he described how he had seen the cocaine "cut," packaged and sold.

Recited in the affidavit was a corroborating statement by an unnamed, but reliable and creditable businessman, given to a state police officer on July 15, 1981, asserting that, from his personal knowledge, the defendant was "currently and on a continuous basis selling cocaine within his business establishment, 'Bobby's.' " Further corroboration was received from a confidential informant and relayed to the superior officer by a federal narcotics agent also on July 15, 1981, that "Garcia has been and is currently, heavily involved in the sale of cocaine in the Bridgeport area."

The information collected by the affiants from informants and relied upon by the magistrate, except for the corroboration from the federal agent, was expressly in the time frame of the preceding one to five days. In the police vernacular, one might even categorize such information as "hot" or "fresh." Of particular importance is the conclusion that these statements do not suggest short-term narcotics violations, but rather, a continuing or long durational scheme of narcotics sales at the business location which was not likely to cease

between the weekend of July 11, and the issuance of the search warrant on July 16, 1981.

While the law does not fix a precise time within which proof of probable cause must be taken by the judge or magistrate, "it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Sgro* v. *United States,* 287 U.S. 206, 210–11, 53 S. Ct. 138, 77 L. Ed. 260 (1932). "The proof supplied must . . . speak as of the time of the issue of that warrant." Id., 211. Our Supreme Court has emphatically followed the *Sgro* rule: "The recital must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." *State* v. *DeNegris,* 153 Conn. 5, 8–9, 212 A.2d 894 (1965).

Where an affidavit recites a mere isolated violation, it is not unreasonable to believe that probable cause will dwindle with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous criminal conduct, time is of less significance. *State* v. *Rose,* supra, 632. The informants' statements in the affidavit before us, singly and in totality, indicate a continuum of illegal activity from the very recent past to the time when the warrant was issued. The defendant was observed by CI-581 at his business constantly in possession of cocaine in varying amounts of up to one ounce.[3] The informant saw the cocaine being "cut," a process that dilutes the strength but also expands the volume of the narcotic substance. The cocaine was packaged in glassine envelopes and generally sold in gram quantities. The defendant was personally seen selling a five gram package of cocaine for $300 cash. The corroborating information also received

---

[3] We note that, by avoirdupois measure, an ounce contains 28.349 grams.

on July 15, 1981, was that the informant had "personal knowledge that Garcia is currently and on a continuous basis selling cocaine within his business establishment, 'Bobby's.' " From such a detailed portrayal of ongoing criminal activity, presented to the officers by two different informants, one five days before the warrant was issued and the other only the day preceding, and corroborated by federal sources also the day before the application, the issuing magistrate could reasonably conclude that probable cause existed at the time the warrant was issued. The court's ruling on the motion to suppress the evidence obtained pursuant to the search warrant was correct under the standard of *Aguilar-Spinelli* which continues to be the rule in this state by virtue of *State* v. *Kimbro,* supra.

There is no error.

In this opinion the other judges concurred.