STATE OF CONNECTICUT *v.* MICHAEL J. MARSALA
(6088)

BIELUCH, O'CONNELL and STOUGHTON, Js.

Argued March 16—decision released August 16, 1988

*Burton M. Weinstein,* with whom, on the brief, was *Richard Emanuel,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant appeals from a judgment of conviction, rendered after a trial to a jury, of

the crimes of violating the state dependency producing drug law. The first count of the substituted information charged that the defendant unlawfully sold a narcotic substance in violation of General Statutes § 21a-278 (b), and the second count charged that the defendant possessed a narcotic substance with intent to sell or dispense in violation of General Statutes § 21a-278 (b).

On appeal, the defendant claims that the trial court erred (1) in denying his motion to suppress evidence seized from his person, and (2) in denying his motions for a judgment of acquittal[1] which he filed on the ground that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

During the hearing on the defendant's motion to suppress, the trial court could reasonably have found the following facts: On October 1, 1986, Monroe police officers obtained a warrant to search a house at 154 Swendsen Drive, which was occupied by the defendant and several others, and to search the defendant's person for narcotics and other substances. Several police officers, including Officers Rudolph D'Ambrosia and Michael Chacho who signed the affidavit supporting the issuance of the search warrant, went to the vicinity of the house and conducted a surveillance in the hope of arresting the defendant in the act of making a narcotics sale. D'Ambrosia watched from a window in a house across the street while Chacho was in a police car a few blocks south. There also were officers in another car a few blocks north. There was radio communication between the officers.

At approximately 5 p.m., D'Ambrosia saw two people arrive at the house separately, sit with the defend-

---

[1] The defendant made two such motions, an oral motion at the close of the state's case and a written motion after the verdict which was denied on the day of sentencing.

ant on the porch for about one-half hour, and then depart together. At approximately 6 p.m., a young man drove up in a red Pontiac. The car stopped in front of the house and the defendant emerged from the house and walked to the car. D'Ambrosia observed the defendant lean or reach into the car and then walk back to the house.

D'Ambrosia called in the other police officers and they arrived within moments. Officer Michael Rinaldi walked up to the defendant, handed him a copy of the warrant and patted him down for weapons and contraband. Rinaldi found two $20 bills and two small packets of cocaine in the defendant's front left pocket. The operator of the red Pontiac, David Savirne, was searched by other officers and was found to have nothing in his possession but a small packet of cocaine and pocket change.

The affidavit supporting the application for the search warrant recited the following information. A named police officer from Trumbull notified the Monroe police that the defendant was a heavy seller of cocaine and other illegal drugs. The police also had received a telephone call from a resident of Swendsen Drive reporting that he had seen what appeared to be drug activity at 154 Swendsen Drive, that he had seen many vehicles drive up to the house, and that a bearded man would come from the house to each vehicle and engage in some sort of transaction. In light of the above reports, Monroe police officers drove by the house several times each day and evening over a period of time and observed numerous vehicles occupied by young males in front of the house as well as a man walking between the house and the vehicles. Additionally, a confidential informant spoke to a Monroe police officer about drug trafficking at 154 Swendsen Drive and gave the police a list of registration numbers of vehicles that he had frequently seen there engaging in similar trans-

actions with the man from the house. On September 29, 1986, this confidential informant told the police that the activity at 154 Swendsen Drive the previous weekend had been particularly heavy. On September 23, 1986, a police officer told Chacho that another informant had told him that he was aware of a man named Mike on Swendsen Drive who was selling cocaine to young people who drove up to the front of the house. The following day a resident of Swendsen Drive phoned Chacho and expressed concern about the activity in front of 154 Swendsen Drive.

The trial court granted the defendant's motion to suppress the evidence seized from the house under the authority of the search warrant, finding that there was nothing in the affidavit from which the issuing judge could have determined the basis of knowledge of the two informants and nothing in the observation of the defendant's activities set forth in the affidavit which served to corroborate the information. The court, however, denied the defendant's motion to suppress evidence seized from his person, reasoning that D'Ambrosia, one of the affiants, had set up a surveillance, and that his own observations at Swendsen Drive corroborated the information that he had received. The court determined that this combined information constituted probable cause to arrest the defendant.

I

The defendant first claims that the court erred in denying his motion to suppress evidence seized from his person on two separate theories. His first line of attack is that the search in which the evidence was discovered was actually conducted pursuant to an invalid warrant, and thus suppression is required. The defendant also claims that the search preceded the defendant's arrest, rather than being conducted pursuant to it, and that there was no legal justification for the warrantless search or arrest of the defendant.

It is beyond dispute that the trial court found that the warrant executed upon the person and residence of the defendant was fatally defective in that the underlying affidavit lacked the requisite indicia of reliability and basis of knowledge. The state concedes this and attempts to justify the seizure of the cocaine on two separate theories: (1) the "good faith" exception to the exclusionary rule as enunciated by the United States Supreme Court in *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) and *Massachusetts* v. *Sheppard,* 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984); and (2) the investigative stop doctrine as set forth in *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

We agree with the defendant insofar as he maintains that the court erred in finding that probable cause existed for his arrest and, hence, that the cocaine was discovered pursuant to a valid search incident to a valid arrest. Accepting that the affidavit, standing alone, was insufficient to establish probable cause for the defendant's arrest, it is apparent that when the police undertook further surveillance, they only observed further activity of the sort set forth in the warrant. No other activity consistent with a narcotics transaction occurred. The police merely acquired more information of the same quality; nothing added to nothing still yields nothing. There was no probable cause for the defendant's arrest.

We are unpersuaded by the state's contention that the cocaine was discovered during the scope of an investigative stop within the meaning of *Terry* v. *Ohio,* supra. Although the affidavit's numerous allegations taken together with the observed suspicious behavior of the defendant were sufficient to give the officers a reasonable and articulable suspicion that the defendant was engaged in a narcotics transaction, we con-

clude that the search conducted here exceeded the scope of limited intrusion allowed in a *Terry* type "frisk."

From the testimony adduced at the suppression hearing, Rinaldi approached the defendant and handed him the search warrant. Immediately thereafter, Rinaldi proceeded to "pat [the defendant] down." He volunteered during direct examination that this was a normal procedure for the safety of himself and others and that he was "checking for both weapons and contraband."

There is no question that, when an officer entertains a reasonable belief that an individual is armed, he may conduct a limited search of that person to confirm or allay his suspicion during the course of an investigatory stop. Such searches must, however, be confined in their scope to "intrusion(s) reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* v. *Ohio,* supra, 29. In the companion case of *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968), the court held that it was impermissible for an officer to go beyond a limited search for weapons and to reach into a defendant's pocket and remove envelopes containing heroin. Id., 65. Such searches are not designed to prevent the destruction of evidence. *Michigan* v. *Long,* 463 U.S. 1032, 1050 n.14, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). Here, Rinaldi freely admitted he was searching for contraband. There is no indication that he felt anything, let alone the paper envelopes of cocaine, before he put his hands in the defendant's pockets. There is no merit to this claim.

The state's argument that the contraband seized pursuant to a search warrant which is later held to be invalid is still admissible under the "good faith" doctrine of *United States* v. *Leon,* supra, stands on somewhat different ground. The defendant vigorously urges

that this claim is not reviewable owing to certain procedural deficiencies. In brief, the defendant claims that it was incumbent on the state to press the trial court for a ruling on the issue or to except to the trial court's failure to rule on the issue and thus it should be deemed abandoned. *Karls* v. *Alexander Realty Corporation,* 179 Conn. 390, 393 n.1, 426 A.2d 784 (1980); *McHugh* v. *McHugh,* 181 Conn. 482, 490 n.4, 436 A.2d 8 (1980). The defendant also claims that this court should refuse to review this claim because the state did not file a preliminary statement of issues under Practice Book § 4013 (a) (1) presenting for review an alternate ground upon which the judgment may be affirmed. *Lynch* v. *Davis,* 181 Conn. 434, 437, 435 A.2d 977 (1980); *City Council* v. *Hall,* 180 Conn. 243, 247 n.5, 429 A.2d 481 (1980). We disagree.

The record indicates that the state argued that the good faith exception was available should the trial court have determined that the search of the defendant was improper, and it briefed this issue on appeal. The defendant's reply brief ably addressed this claim and the claim was fully argued before us. See *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 28, 496 A.2d 967, cert. denied, 197 Conn. 817, 499 A.2d 56 (1985). On these facts, there is no prejudice to the appellant. See *DiSesa* v. *Hickey,* 160 Conn. 250, 263, 278 A.2d 785 (1971). Therefore, we will review this claim.

In *State* v. *Brown,* 14 Conn. App. 605, 543 A.2d 750 (1988), this court held that an exclusionary rule does exist under article first, § 7, of our state constitution and that an exception exists to that rule when police officers act in objective good faith in relying upon a search warrant issued by a detached and neutral magistrate. Id., 632. Unlike *Brown,* however, the issue of the good faith exception was not decided in the trial court proceeding. Our review of the record indicates that although the state elicited testimony consistent with

its good faith argument, the trial court upheld the search of the defendant's person on a completely different theory and was completely silent as to its conclusions on the state's good faith argument.

We are not able to determine whether this case fits within the good faith exception as set forth in *Brown* without a factual determination by the trial court concerning (1) whether the affiants misled the issuing judge within the standards of *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), (2) whether the issuing judge wholly abandoned his judicial role as discussed in *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979), (3) whether the police officers could have had a reasonable belief in the validity of the warrant in light of the indicia of probable cause; *Brown* v. *Illinois,* 422 U.S. 590, 610–11, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (Powell, J., concurring); and (4) whether the warrant was so facially deficient in its lack of particularity, regarding the place to be searched or the articles to be seized, that the executing officers could not reasonably presume it to be valid. *United States* v. *Leon,* supra, 923.

We remand the case, therefore, to the trial court for its determination of these issues.

## II

The defendant's second claim is that the evidence produced at trial was insufficient to establish his guilt on both counts beyond a reasonable doubt. Assuming that the evidence discussed earlier was properly admissible, the defendant undertakes to show that with respect to the first count of the information, which charged the defendant with unlawfully selling a narcotic substance, the evidence of a sale was "grossly insufficient." The defendant also contends that the evidence at trial was insufficient to establish beyond a reasonable doubt his "intent to sell" with respect to the second count of

the information. We disagree. We address this claim because depending upon the factual determination to be made by the trial court in light of our earlier finding, the defendant's sufficiency claim may be relevant.

In all claims involving the sufficiency of evidence, broad deference is to be accorded to the conclusions of the trier of fact. The question to be resolved is whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983); quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Thus, we approach the analysis with a view toward sustaining the verdict of the jury and will affirm the conviction if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Cates,* 202 Conn. 615, 627, 522 A.2d 788 (1987); *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984); *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981).

Because we must weigh the cumulative effect of the evidence adduced at trial in this analysis, we address the sufficiency claims as to both counts together. Evidence was presented at trial that indicated a high volume of activity at 154 Swendsen Drive involving the defendant and persons in vehicles which would pull up to his home at numerous times of the day and night. If we assume, arguendo, as does the defendant, that the evidence seized from him was admissible, the jury also had the following facts: (1) two packets of cocaine in a pharmaceutical fold, both one inch by one quarter of an inch and made of torn magazine papers; and (2) two $20 bills. Additionally, evidence was presented at trial to indicate that Savirne, as he attempted to pull away from Swendsen Drive, was found to possess on his person nothing but a small packet of cocaine similar to those seized from the defendant in his right front pocket and "pocket change." The two packets seized

from the defendant weighed 170 mg. and 160 mg., respectively. The packet seized from Savirne weighed 170 mg.

The jury obviously inferred from the above facts that Savirne drove up to 154 Swendsen Drive and had obtained the packet of cocaine from the defendant in exchange for some or all of the money found in the defendant's pocket. Similarly, the jury also obviously inferred that the two packets of cocaine seized from the defendant were being held by the defendant for purposes of sale in much the same manner as the transaction which had occurred between the defendant and Savirne was conducted. We must determine whether these inferences were so unreasonable that the verdict cannot be supported. *State* v. *Baskins,* 12 Conn. App. 313, 317, 530 A.2d 663 (1987).

We conclude that these inferences were permissibly drawn. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." Id., quoting *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985). The jury could have reasonably concluded, on the basis of the testimony concerning the pattern and frequency of the defendant's activities and the evidence seized from his person and from Savirne that the defendant was engaged in the sale of narcotics to the occupants of vehicles which would drive up to his home. We find no merit to the defendant's claim that the evidence was insufficient to establish guilt beyond reasonable doubt.

There is error and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.