## State of Connecticut *v.* James Morrissey
## (6788)

Borden, Stoughton and Norcott, Js.

Argued April 18—decision released June 20, 1989

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Michael Glowa,* assistant state's attorney, and *Eileen McCarthy Geel,* certified legal intern, for the appellant (state).

STOUGHTON, J. Having obtained permission from the trial court pursuant to General Statutes § 54-96, the state has appealed from a judgment of dismissal rendered after the trial court had granted the defendant's motion to suppress certain evidence.[1]

On or about January 9, 1987, members of the Bristol police department searched the defendant's apartment under the authority of a search warrant. The search warrant was based on an affidavit that was prepared by two police officers who had had considerable training and experience in the field of narcotics enforcement. The affidavit contained the following statements of the affiants.

Since October, 1984, one of the affiants had been aware that the defendant was a large scale drug dealer. This information was obtained from anonymous callers to the police department drug hot line and from informants. On October 9, 1984, the police conducted a surveillance at the apartment of another suspected drug dealer, and the defendant's vehicle was seen frequently at that apartment. The suspected drug dealer was arrested and convicted of drug charges in that investigation. A criminal record check revealed that, in 1974, the defendant was arrested for attempting to obtain controlled drugs. The affiants also stated that on February 15, 1985, one affiant met with an informant who related that he had a close friend who went to an apartment rented by the defendant's girlfriend to see the defendant. The friend told the informant that he had seen cash, cocaine and marihuana at the premises, and that the contraband belonged to the defendant who was selling drugs from that address. The owner of the premises said that he was getting complaints from his ten-

---

[1] The defendant's counsel was granted permission to withdraw his appearance after the state filed its appeal. The defendant did not file a brief, nor did he appear for oral argument.

ants concerning traffic, and that the smell of marihuana was frequently detected on the premises. The owner suspected that the defendant was selling drugs from the house. A Bristol police officer who lived on the street noticed that traffic was very heavy, and he also was suspicious. While the Bristol police were in the process of preparing a search warrant for the premises, the defendant and his girlfriend moved from that address.

The affiants further stated as follows. The defendant then rented apartment 209, building 2, 1175 Farmington Avenue, Bristol. On January 6, 1987, one of the afffiants received a call from a "local reputable businessman" who had been reliable in the past. The businessman stated that a friend of his had told him that the defendant was selling a large amount of cocaine from the apartment, that the friend had provided this information because the friend's son was "screwed up" on cocaine because of the defendant, and that the friend had followed his son to the defendant's apartment because he was suspicious and had discovered that his son was using cocaine supplied by the defendant.

On the same date, the Bristol police received a call on the drug hot line from an unidentified caller who stated that he could give details to the police concerning a large scale cocaine dealer at 1175 Farmington Avenue and named the defendant as the dealer. This call was not connected to the previous call. The caller stated that many of his friends were going to the defendant's apartment and buying cocaine. The caller gave details of how the defendant would go to Colorado, buy cocaine, and bring it back through Bradley International Airport at least once a month. He said that the defendant was dealing in thousands of dollars worth of cocaine.

One of the affiants also stated that he had spoken to a friend whose son is an addict and who had stated that she had driven by 1175 Farmington Avenue and saw her son drive into the apartment building block and go inside. She had stated also that her son is a good friend of the defendant and that she thinks her son is going to the defendant's apartment to purchase cocaine. The affiants further stated that the Bristol police felt that the defendant's drug business had been in continuous progression since he left his girlfriend's apartment, and that the phone calls from concerned parents and the public clearly showed activity from the defendant's apartment at 1175 Farmington Avenue.

As a result of the search, the police seized cocaine, marihuana, drug records and drug paraphernalia from the defendant's apartment. On the basis of the evidence seized during the search, the police secured an arrest warrant for the defendant and he was arrested and charged with possession of cocaine with intent to sell, possession of drug paraphernalia, and possession of marihuana.

The defendant moved to suppress the evidence seized during the search on the ground that the search warrant was unlawfully obtained in that it was based on hearsay, innuendo and anonymous tips, and was not based upon probable cause that the evidence to be seized was in fact in the defendant's apartment at the time of the search. The defendant claimed that the seizure violated the fourth and fourteenth amendments to the United States constitution and article I, § 7, of the Connecticut constitution.

After a hearing, the trial court granted the defendant's motion to suppress the evidence. The trial court considered the affidavit that supported the warrant according to the standards for probable cause set forth in *State* v. *Kimbro,* 197 Conn. 219, 236, 496 A.2d 498

(1985),[2] which applied the two-pronged *Aguilar-Spinelli* test.[3] This test requires that a court analyze: " ' "(1) the basis of the informant's knowledge—the means by which he acquired his information, and (2) the underlying facts establishing either his general veracity or his reliability in the particular case." ' *State* v. *Garcia,* [7 Conn. App. 354, 358, 508 A.2d 824 (1986)], quoting *State* v. *Martin,* 2 Conn. App. 605, 610, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985)." *State* v. *Brown,* 14 Conn. App. 605, 614, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988).

In its memorandum of decision, the trial court found the sources of information to be reliable.[4] The trial court found, however, that the affidavit did not meet the first prong of the *Aguilar-Spinelli* test because it did not contain "a sufficient statement of the underlying circumstances from which the informer made his conclusions, nor can the basis of this knowledge be inferred from the information provided in the application." The trial court noted that there was nothing within the four corners of the affidavit to indicate that the police had attempted to corroborate the information that had been provided to them, or to contact the sources of information in order to ascertain the original source of their information or the underlying facts by which they came by their information.

[2] *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), applied the standards of the *Aguilar-Spinelli* test to the determination of probable cause for a warrantless arrest. This standard also applies to the determination of probable cause for a search warrant. *State* v. *Brown,* 14 Conn. App. 605, 614, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988).

[3] *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1059, 12 L. Ed.2d 723 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 854, 21 L. Ed. 2d 637 (1969).

[4] The trial court found that the sources were reliable because the sources were "citizen-informers" and therefore presumed to be reliable. See *State* v. *Daley,* 189 Conn. 717, 723–24, 458 A.2d 1147 (1983); *State* v. *Barrett,* 40 Conn. Sup. 547, 550, 525 A.2d 558 (1985), aff'd, 10 Conn. App. 667, 525 A.2d 139 (1987).

The trial court rejected the state's contention that the search could be upheld under the good faith exception to the exclusionary rule as set forth in *United States* v. *Leon,* 468 U.S. 897, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

I

SUFFICIENCY OF THE AFFIDAVIT

"In reviewing the sufficiency of an affidavit for a search warrant we do not conduct a de novo review. *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983)." *State* v. *Couture,* 194 Conn. 530, 546, 482 A.2d 300 (1984), cert denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). "[W]e confine ourselves to the facts which appear on the face of the affidavit or which properly may be inferred therefrom; *State* v. *Williams,* 170 Conn. 618, 629, 368 A.2d 140, cert. denied, 429 U.S. 865, 97 S. Ct. 174, 50 L. Ed. 2d 145 (1976); testing those facts with common sense and reality; *United States* v. *Ventresca,* 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); and with great deference to the fact that the issuing magistrate did determine that probable cause existed. *Jones* v. *United States,* 362 U.S. 257, 270–71, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960)." *State* v. *Couture,* supra, 536. The affidavit must not only meet both prongs of the *Aguilar-Spinelli* test, it must also establish a nexus between the premises to be searched and the objects sought. *State* v. *Brown,* supra, 614–15.

We agree with the trial court that the affidavit did not meet the first prong of the *Aguilar-Spinelli* test. There is nothing in the affidavit that suggests that any of the informants ever bought or saw the alleged narcotics. See *State* v. *Kimbro,* supra; see also *State* v. *Ralston,* 7 Conn. App. 660, 674–75, 510 A.2d 1346 (1986).

The affidavit also fails to disclose an independent police investigation or information that would corroborate the informants' charges. See *State* v. *Kimbro,* supra.

II

### THE GOOD FAITH EXCEPTION

At the suppression hearing, the state argued that the good faith exception of *Leon* should apply if the court determined that the affidavit was insufficient. The trial court refused to recognize that such an exception existed under Connecticut law.

We note initially that the trial court's memorandum of decision was filed before the release of our decision in *State* v. *Brown,* supra, in which we held that a good faith exception to the exclusionary rule does exist under Connecticut law. Consequently, the trial court erred in refusing to address whether the exception applied to the situation before it.

The good faith exception is dependent upon a police officer's objective good faith reliance upon a search warrant issued by a neutral and detached magistrate. *State* v. *Marsala,* 15 Conn. App. 519, 525, 545 A.2d 1151 (1988); *State* v. *Brown,* supra, 632–33; see also *United States* v. *Leon,* supra, 922 n.23. The state bears the burden of proving that the police officer's reliance on the warrant was objectively reasonable. *United States* v. *Michaelian,* 803 F.2d 1042, 1048 (9th Cir. 1986); *United States* v. *Hendricks,* 743 F.2d 653, 656 (9th Cir. 1984), cert. denied, 470 U.S. 1006, 105 S. Ct. 1362, 84 L. Ed. 2d 382 (1985); see also *United States* v. *Leon,* supra, 924. The good faith exception does not apply "(1) where the issuing magistrate was misled within the standards of *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), (2) where the magistrate wholly abandoned his judicial role, as in *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 99 S.

Ct. 2319, 60 L. Ed. 2d 920 (1979), (3) where the warrant was so lacking in indicia of probable cause that the police officers could not have a reasonable belief in its validity; see *Brown* v. *Illinois,* 422 U.S. 590, 610–11, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (Powell, J., concurring); and (4) where the warrant was so facially deficient in its lack of particularity, regarding the place to be searched or the things to be seized, that the executing officer could not reasonably presume it to be valid. *United States* v. *Leon,* supra, 923." *State* v. *Brown,* supra, 635; see also *State* v. *Marsala,* supra, 526.

The state argues that the applicability of the good faith exception is dependent upon whether the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." See *United States* v. *Leon,* supra. The state argues that because this affidavit contains significant indicia of probable cause this court should reverse the dismissal of the charges against the defendant and reinstate the information. In its brief, the state asserts that "[t]here is nothing in the record to indicate that the affidavit contains deliberate or reckless falsehoods, or that the magistrate abandoned his judicial role," because no such allegations were made in the defendant's motion to suppress or the accompanying memorandum in support of the motion. The state also asserts that the warrant affidavit and application describe with particularity the place to be searched and the items to be seized.

It is true that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing this affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id., 926. The difficulty with the state's argument, however, is that the

trial court never made an inquiry into the factual circumstances surrounding the good faith of the police officers. The record reveals that the arguments before the court pertained to the sufficiency of the affidavit and whether the court should recognize the good faith exception. The hearing never reached the merits of the good faith issue, and no police officers testified before the court.

The good faith inquiry is confined to the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id., 922 n.23. The inquiry, however, is not confined to the four corners of the affidavit, but may be based upon all the circumstances surrounding the affidavit. *United States* v. *Martin,* 833 F.2d 752, 757 (8th Cir. 1987)(Lay, C.J., concurring); see also *Malley* v. *Briggs,* 475 U.S. 335, 345, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *United States* v. *Leon,* supra.

In this case, a factual determination concerning the reasonableness of the police officer's reliance on the warrant has not been made. We are therefore unable to determine whether this case fits within the good faith exception as set forth in *Brown;* and must remand it to the trial court for such a determination. See *State* v. *Marsala,* supra; see also *United States* v. *Roberts,* 852 F.2d 671, 675 (2d Cir. 1988).

The case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.