STATE OF CONNECTICUT *v.* DAVID JOHNSON

STATE OF CONNECTICUT *v.* DIANE MCINTOSH
(7401)
(7405)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued March 7—decision released June 12, 1990

*Denise Dishongh* and *Louis S. Avitabile,* special public defenders, with whom was *Joshua Kricker,* special public defender, for the appellants (defendants).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Marcia Smith,* senior assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendants appeal from their convictions, after a jury trial, of possession of heroin in violation of General Statutes § 21a-279 (a) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). They claim that the trial court should have granted their motion to suppress.

On April 2, 1987, Waterbury police received information from a known confidential informant that "cocaine and heroin were being sold from the defendants' apartment." The police then set up a controlled buy. They searched the informant, gave him $30 and observed him enter the defendants' apartment building. Approximately one minute later, the police observed, through an exterior window, the informant inside the defendants' apartment. Several minutes later, the informant emerged from the building and turned over to the officers a packet containing a white powder that field-tested positive for cocaine. The informant told police that the defendant Johnson instructed him to wait a few minutes while he made up the packet.

On April 7, 1987, the police sought and obtained a search and seizure warrant based upon this information. They executed the warrant in the early morning hours of April 8, 1987. As a result of the search, they found packets of drugs and drug paraphernalia.[1]

The defendants moved to suppress the evidence found during the course of this search. The trial court

---

[1] Specifically, the police found fifty glassine packets containing a white powder, a straw and small vial, a straw and a plastic tag with residue on it and a pipe made out of an Advil bottle. All the items were found in the kitchen and bedroom area of the defendants' apartment.

suppressed certain items seized as being beyond the scope of the warrant, but it found that the warrant satisfied the requirements of the *Aguilar-Spinelli* test[2] and that the information relied upon was not stale because it indicated ongoing criminal activity.

The defendants claim that the evidence should have been suppressed because the search warrant was fatally defective.[3] They argue that the affidavit failed to satisfy the two-pronged *Aguilar-Spinelli* test and that the warrant was issued based upon stale information.[4]

Article first, § 7, of the Connecticut constitution "affords more substantive protections to citizens than does the fourth amendment to the federal constitution in the determination of probable cause." *State* v. *Kimbro,* 197 Conn. 219, 233, 496 A.2d 498 (1985). In reviewing a challenge to a warrant affidavit based upon information from an unnamed informant, we must apply the two-pronged *Aguilar-Spinelli* test, rather than the less strict "totality of the circumstances" test enunciated in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

"The *Aguilar-Spinelli* test for reviewing a finding of probable cause consists of two prongs: ' "The issu-

[2] *Aguilar* v. *Texas,* 370 U.S. 108, 84 S. Ct 1059, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 854, 21 L. Ed. 2d 637 (1969).

[3] The defendants each appealed separately and then filed a motion to consolidate, which was granted.

[4] The defendants raise five other claims of error as well. They claim that the evidence was insufficient to prove that the substance seized was heroin. They also claim that the trial court erred (1) in allowing them to be convicted based upon the results of a test that is less reliable than that required for workplace drug testing, (2) in permitting the state to rely on the testimony of an expert who had not performed the tests in question, (3) in denying the defendants' motion for judgment of acquittal on "uncharged theories of liability" and their posttrial request that the jurors be polled, and (4) in denying the defendants' postverdict motion for the appointment by the court of an independent expert. Because we find error on the motion to suppress, we need not address these claims.

ing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable." ' *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984)." *State* v. *Ruscoe,* 212 Conn. 223, 228–29, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

If the tip fails to pass the *Aguilar-Spinelli* test, we must then determine whether the affidavit contains a recital of independent corroboration by the affiants. *People* v. *David,* 119 Mich. App. 289, 293–94, 326 N.W.2d 485 (1982); see also *State* v. *Ruscoe,* supra, 229; *State* v. *Delmonaco,* supra, 340–41. "Even though 'the suspicions engendered by the informant's report' may be insufficient to justify issuance of a warrant independently, where the affiants' own observations are very incriminating, the informant's report may bridge the gap and 'ripen into a judgment' of probable cause." (Citations omitted.) *State* v. *Delmonaco,* supra, 341.

In this case, the informant's tip was that "cocaine and heroin were being sold from the defendants' apartment." This tip alone fails to satisfy either prong of the *Aguilar-Spinelli* test. This statement was a mere conclusion, and the affiants have provided no "underlying circumstances" relied on by the informant. See *State* v. *Ruscoe,* supra, 228. They have failed, therefore, to provide the informant's "basis of knowledge" for this information. "[C]onclusory statements without a recital of the underlying factual circumstances will not suffice [to establish probable cause.]" *State* v. *Willey,* 363 A.2d 739, 741 (Me. 1976); see also *State* v. *Gomez,* 101 Idaho 802, 806–807, 623 P.2d 110 (1980),

cert. denied, 454 U.S. 963, 102 S. Ct. 503, 70 L. Ed. 2d 378 (1981).

This tip is similar to the one given in *State* v. *Willey,* supra. In *Willey,* the informant told police that the defendant " 'always' has plenty of marijuana." In that case, the court held that "the affidavit of [the officer] failed to reveal how [the informant] was in a position to be able to say, as purported truth, that Willey 'always' has plenty of marijuana and 'was expecting a large shipment' in a day or two. . . . [The informant's] statements were . . . statements of ultimate conclusions . . . ." Id., 743. The court then concluded that it was necessary, at a minimum, that the affidavit contain both the basis for the conclusions and whether they were based upon the direct perceptions of the informant. Id.

Further, the affiants in this case failed to provide any of the underlying circumstances from which they concluded that this tip was reliable or that this informant was credible, hence, failing the second prong of the test. *State* v. *Delmonaco,* supra; *Commonwealth* v. *Fleurant,* 2 Mass. App. 250, 254, 311 N.E.2d 86 (1974) (to meet the second prong, "[e]vidence that the informant was an eyewitness is a constitutionally sufficient demonstration of the source of his information"); *People* v. *David,* supra, 294. Because this statement fails under both prongs of the *Aguilar-Spinelli* test, in and of itself, it would be insufficient to establish probable cause. See *State* v. *Gomez,* supra, 806.[5]

Because the independent tip here is inadequate under *Aguilar,* "the other allegations which corroborate the

[5] In *State* v. *Gomez,* 101 Idaho 802, 806, 623 P.2d 110 (1980), the court, addressing a similar tip, stated that "if the affidavit in question were based solely on the anonymous informant's tip, we would be compelled to hold the search warrant invalid. The tip, by itself, does not meet the *Aguilar* test, since it lacks the primary factual data required for the magistrate to evaluate the conclusional validity of the informant's statements."

information contained in the hearsay report should . . . be considered." *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); see also *State* v. *Ruscoe,* supra, 229; *State* v. *Delmonaco,* supra, 340–41; *State* v. *Ralston,* 7 Conn. App. 660, 672, 510 A.2d 1346 (1986). " 'When a tip not meeting the *Aguilar* test has generated police investigation and this has developed sufficient corroboration . . . the tip, even though not qualifying under *Aguilar,* may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause.' " (Citation omitted.) *State* v. *Gomez,* supra, 807; see also *United States* v. *Caniesa,* 470 F.2d 1224, 1231 (2d Cir. 1972); *State* v. *Delmonaco,* supra.

Here, the affiants arranged with the informant to conduct a controlled buy, which they surveilled. The defendants claim that this controlled buy could not support a finding of probable cause because it was "imperfect" in that, although the informant was searched before the buy, he was not searched after the buy. The trial court found that while the buy was imperfect, the minor imperfections did not render the warrant invalid.

While it is true that a "perfect controlled buy" occurs only when the informant is searched both before and after entry, failure to conduct the search after entry need not be fatal to the finding of probable cause. See, e.g., *Hignut* v. *State,* 17 Md. App. 399, 303 A.2d 173 (1973) (similar buy held to establish "bare bones" minimum for probable cause); *People* v. *Ferguson,* 94 Mich. App. 137, 288 N.W.2d 587 (1979) (similar controlled buy made by a reliable informant held to establish probable cause). In this case, although the officers did not search the informant a second time or conduct complete surveillance of his every move from the time he left their sight until the time he returned, they did sur-

veil most of his movement. The officers saw him enter the building, they observed him through an exterior window in the defendants' apartment, and they saw him leave the apartment and return directly to them with a packet of white powder. The officers also observed that he did not stop to talk to anyone on the way to or from the apartment building.

Further, while the controlled buy may not have established probable cause, the buy, coupled with the defective tip, may have been enough to "bridge the gap" to allow the magistrate to find probable cause. *State* v. *Delmonaco,* supra. The magistrate need not completely ignore this faulty tip when determining whether there is probable cause for the warrant to issue. Id., 341; *State* v. *Salz,* 8 Conn. App. 125, 134, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986); see also *State* v. *Gomez,* supra, 806–807.

It is true, as the state concedes, that this affidavit presents a marginal case for probable cause.[6] Compare *Hignut* v. *State,* supra (where informants' reliability was proven and still a controlled buy of this nature was considered "bare bones minimum"), with *People* v. *David,* supra, 294 (where a controlled buy similar to the one involved in this case was held not to establish probable cause). We must afford deference, however,

---

[6] In its brief, the state presents additional facts that are not included in the warrant affidavit in an attempt to bolster its argument that the probable cause determination was correct. We will not consider these additional facts. It is axiomatic that a "reviewing court may consider only the information that was actually before the issuing magistrate at the time he or she signed the warrant." *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984); *State* v. *Couture,* 194 Conn. 530, 536, 1482 A.2d 300, cert. denied, 469 U.S. 1192, 1055 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Morrissey,* 18 Conn. App. 658, 663, 560 A.2d 471, cert. granted, 212 Conn. 821, 565 A.2d 541 (1989); *State* v. *Salz,* 8 Conn. App. 125, 129, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986); *Ashley* v. *State,* 251 Ind. 359, 368, 241 N.E.2d 264 (1968).

to the magistrate's determination and " 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.' *United States* v. *Ventresca,* 380 U.S. 102, 106, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)." *State* v. *Morrill,* 205 Conn. 560, 565, 534 A.2d 1165 (1987); *State* v. *Jackson,* 162 Conn. 440, 445, 294 A.2d 517 (1972).

While probable cause may have existed on April 2, the day that the affiants obtained their information, the question still remains whether that probable cause existed five days later, when the affiants sought a warrant. "[T]he proof [of probable cause] must be of facts so closely related to the time of the *issuance* of the warrant as to justify a finding of probable cause at that time." (Emphasis added.) *Sgro* v. *United States,* 287 U.S. 206, 210–11, 53 S. Ct. 138, 77 L. Ed. 260 (1932); see also *State* v. *Abbott,* 5 Conn. App. 441, 444, 499 A.2d 437 (1985); *Ashley* v. *State,* 251 Ind. 359, 368, 241 N.E.2d. 264 (1968); *State* v. *Willey,* supra, 741. "The passage of time is a valid consideration in deciding whether probable cause exists." *People* v. *David,* supra, 295. "Stale probable cause, so called, is probable cause that would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought." *State* v. *Valenzuela,* 130 N.H. 175, 192, 536 A.2d 1252 (1987). "Unfortunately, there exists no magical number of days within which information is fresh and after which the information becomes stale. The question must be resolved in light of the circumstances of each case." *State* v. *Gomez,* supra, 808; see also *Sgro* v. *United States,* supra; *People* v. *David,* supra, 295; *State* v. *Ingram,* 251 Or. 324, 445 P.2d 503 (1968).

Where the affidavit recites criminal activities "of a protracted or continuous nature, a time delay in the sequence of events is of less significance." *State* v. *Gomez,* supra; see also *United States* v. *Johnson,* 461

F.2d 285 (10th Cir. 1972); *People* v. *David,* supra, 295–96. Where, however, an affidavit recites merely an isolated violation, the passage of time between the occurrence and the issuance of the warrant is significant and the probable cause may "[dwindle] rather quickly with the passage of time." *United States* v. *Johnson,* supra; see also *United States* v. *Martino,* 664 F.2d 860 (2d Cir. 1981); *State* v. *Garcia,* 7 Conn. App. 354, 360–61, 508 A.2d 824 (1986).

In this case, the affidavit was based solely on one isolated instance of criminal activity, that is, the controlled buy on April 2.[7] The informant's statement that the defendant Johnson told him "to wait while he made up the packet," even if that statement could be credited,[8] does not raise the logical inference that the drugs would still be in the apartment five days later.

Even if we were to assume this informant's reliability, the affidavit did not provide any information that would create an inference of "continuous or protracted" illegal activities. Cf. *United States* v. *Martino,* supra (where the affidavit was found to contain description of ongoing drug activity where it contained a recitation of a number of occasions of drug trafficking between early March and May 6, 1980, and the war-

---

[7] Even though the informant's defective and conclusory statement was not completely ignored in evaluating the facial sufficiency of the affidavit, it cannot be substantially credited in and of itself, nor can it stand alone to support an inference of continuing activity. In addition to failing under *Aguilar-Spinelli* because of its bare, conclusory nature, the statement is also undated, and it was given on the same date as, and as prompted the arrangement of, the controlled buy. If undated information is factually related to dated information in the affidavit, an inference that the events contained in the statement are in close proximity to the date provided is permissible. 2 W. LaFave, Search and Seizure § 3.7 (a), p. 87.

[8] This statement, too, fails to pass muster under the *Aguilar-Spinelli* test. While the basis of knowledge prong may be satisfied by the informant's direct contact with the defendants, the affiants still have failed to present any basis for determining whether this informant was reliable.

rant issued on May 28); *State* v. *Burgos,* 7 Conn. App. 265, 267, 508 A.2d 795 (1986) (where affidavit contained details of several controlled buys conducted over two month period and affidavit was sought on date of last buy); *State* v. *Cavegn,* 356 N.W.2d 671 (Minn. 1984) (where affidavit contained statements that the informant provided information that he had purchased drugs from the defendant within the past month, and the informant made a controlled buy within the past week); *State* v. *Gomez,* supra (where affidavit contained statement that police had observed defendant making heroin deliveries on two separate occasions in addition to a recent tip by informant that defendant had drugs in residence at the time of the tip); *State* v. *Ogden,* 391 So. 2d 434, 436 (La. 1980) (affidavit contained statement of reliable informant that he had purchased drugs on several occasions, the last of which was three days before the warrant was issued). The affidavit in this case, as in the case of *People* v. *David,* supra, contained only a single, isolated sale, which alone could not support a warrant issued five days later. In *David,* the Michigan Court of Appeals, in holding invalid a search warrant issued three days after a controlled buy similar to the one in this case, stated, "[w]e do not hold that a three day delay renders an affidavit stale; however, in the case at bar the affidavit alleged only a single sale, not continuing drug sales. The affidavit did not even state that [the] defendant possessed marijuana after he made the sale to the informant." Id., 296; see also *People* v. *Siemieniec,* 368 Mich. 405, 118 N.W.2d 430 (1962) (where affiant saw defendant illegally sell alcohol on one occasion, that sale alone could not establish probable cause to issue a warrant four days later);[9]

---

[9] In *People* v. *Siemieniec,* 368 Mich. 405, 118 N.W.2d 430 (1962), the court held invalid a warrant issued four days after the affiant himself witnessed an illegal alcohol sale. The court held, "[i]f [the defendant] unlawfully sold or furnished for sale alcoholic beverages on September 13, 1958, she could have been prosecuted for doing so, but such sale alone afforded no ground

*Ashley* v. *State,* supra (where affidavit describing only one controlled buy held not to establish probable cause for issuance of warrant eight days later).[10]

The search warrant in this case was for drugs, which can be easily concealed, removed or destroyed. Id.; *Commonwealth* v. *Fleurant,* supra, 254; *State* v. *Ingram,* supra, 507. Probable cause to believe that certain drugs are in a building on April 2 is not necessarily probable cause to believe that they will be in the same place five days later. See *Ashley* v. *State,* supra, 269. Because this warrant affidavit contained no facts indicating that the drug activity was continuous, we must conclude that the probable cause was stale at the time the warrant was issued.

We note, as did the Oregon Supreme Court in *State* v. *Ingram,* supra, 329, that we are not abandoning the policy expressed in *United States* v. *Ventresca,* supra; see *State* v. *Morrill,* supra; "which is to encourage searches pursuant to warrants and, therefore, to resolve marginal cases in favor of holding the warrant valid." We conclude in this case, however, that, as in *Ingram,* "the affidavit has fallen below the acceptable standard." *State* v. *Ingram,* supra; see also *Ashley* v. *State,* supra.

The state next argues that even if this warrant was based upon stale information, the police relied upon it in "good faith" and, therefore, the evidence should

for a finding of reasonable cause to believe that in September 17, four days after, she was continuing to do so, thereby justifying issuance of the search warrant."

[10] In *Ashley,* the state attempted to introduce evidence of several additional controlled buys that occurred between the buy detailed in the affidavit and the issuance eight days later. The court refused to consider these additional facts because they were not set forth in the warrant, and it held the warrant invalid. *Ashley* v. *State,* 251 Ind. 359, 368, 241 N.E.2d 264 (1968).

remain admissible under the good faith exception to the exclusionary rule. We disagree.

We conclude that under the federal law adopted by this court in *State* v. *Brown,* 14 Conn. App. 605, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988), the good faith exception would not apply.[11] Under that rule, the exception does not apply "(1) where the issuing magistrate was misled within the standards of *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), (2) where the magistrate wholly abandoned his judicial role, as in *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979), (3) where the warrant was so lacking in indicia of probable cause that the police officers could not have a reasonable belief in its validity; see *Brown* v. *Illinois,* 422 U.S. 590, 610–11, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (Powell, J., concurring), and (4) where the warrant was so facially deficient in its lack of particularity, regarding the place to be searched or

---

[11] The question of whether a good faith exception to the exclusionary rule exists under Connecticut law presently remains unresolved. This court has clearly recognized a good faith exception in Connecticut. *State* v. *Brown,* 14 Conn. App. 605, 635, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); see also *State* v. *Morrissey,* 18 Conn. App. 658, 664, 560 A.2d 471, cert. granted, 212 Conn. 821, 565 A.2d 541 (1989); *State* v. *Marsala,* 15 Conn. App. 519, 526, 545 A.2d 1151, cert. denied, 209 Conn. 816, 550 A.2d 1087 (1988). Our Supreme Court, however, has certified that question for review. See *State* v. *Morrissey,* 212 Conn. 821, 565 A.2d 541 (Supreme Court certified for review the question, "Did the Appellate Court err in remanding this case for a factual determination concerning the reasonableness of the police officer's search in reliance upon their decision in *State* v. *Brown,* 14 Conn. App. 605, holding that there is a good faith exception to the exclusionary rule under article first, § 7, of the Connecticut Constitution"); *State* v. *Marsala,* 19 Conn. App. 478, 563 A.2d 730, cert. granted, 213 Conn. 805, 567 A.2d 836 (1989) (Supreme Court certified for review the question, "Does a good faith exception to the exclusionary rule exist under Connecticut law"). We cannot speculate as to the decision our Supreme Court will reach on this question. In addressing this issue, therefore, the only analysis that we have available is the federal analysis that this court employed in *State* v. *Brown,* supra.

the things to be seized, that the executing officer could not reasonably presume it to be valid. *United States v. Leon,* [468 U.S. 897, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)]." *State v. Brown,* supra, 635. On appeal, such a determination is " 'subject to de novo review as a mixed question of fact and law.' " *State v. Marsala,* 19 Conn. App. 478, 480–81, 563 A.2d 730, cert. granted, 213 Conn. 805, 567 A.2d 836 (1989), quoting *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir. 1984), cert. denied, 470 U.S. 1006, 105 S. Ct. 1362, 84 L. Ed. 2d. 382 (1985).

This affidavit falls within the third class of cases. We have concluded that even if the warrant had been sought on the day of the controlled buy, the affidavit still would have contained only the "bare bones minimum" necessary to establish probable cause under the *Aguilar-Spinelli* test. Because the police obtained the warrant five days after the one isolated instance of criminal activity contained in the affidavit, we cannot conclude that, without more, they could have "harbored an objectively reasonable belief in the existence of probable cause" at the time the warrant was issued. *State v. Marsala,* supra, 482; *State v. Morrissey,* 18 Conn. App. 658, 665, 560 A.2d 471, cert. granted, 212 Conn. 821, 565 A.2d 541 (1989).

The judgments are reversed and the case is remanded with direction to grant the defendants' motion to suppress.

In this opinion the other judges concurred.