STATE OF CONNECTICUT *v.* JAMES SHELTON

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued January 7—decided January 26, 1971

*Herbert J. Bundock,* public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

ALCORN, C. J.   The defendant shot and killed Willie Lofton and was indicted for murder in the first degree. He was tried by a jury which returned a verdict of guilty of murder in the second degree. The defendant appeals from the judgment rendered on the verdict, assigning as error the denial of his motion to set aside the verdict on the ground that

it was contrary to the law and the evidence, and the denial of his motion to have the jury polled subsequent to the announcement of the verdict.

We first consider the attack on the denial of the motion to set aside the verdict by examining the evidence printed in the appendices to the briefs to determine whether it was such that the jury, acting fairly, intelligently and reasonably, could have arrived at the verdict rendered. *State* v. *Miller,* 154 Conn. 622, 624, 228 A.2d 136. From the evidence offered the jury could reasonably have found the following facts. In reciting the facts we use the word "gun" in the vernacular as the parties have done. The reference throughout is to a revolver or pistol.

The defendant met Lofton's wife, by appointment, at about 4:30 p.m. on Sunday, September 1, 1968, at a restaurant in Fairfield. She left her automobile there and entered the defendant's Cadillac car in which they drove to a local motel. At about 9:30 or 10 p.m., they returned from the motel to the restaurant parking lot where Lofton's wife had left her car. She opened the door to get out of the defendant's vehicle and was pulled out of the car by her husband, Lofton, who struck and cut her. The defendant locked the doors of his Cadillac, and Lofton slashed the four new tires on the vehicle while the defendant was trying to start it to get away. The defendant managed to get his car started and drove away from the parking lot until he was forced to stop at the entrance to the Connecticut Turnpike because all four tires went flat. The defendant took a gun from his car and went on foot to a telephone booth on the turnpike from which he telephoned to his wife to come and get him. His wife picked him up in her Ford station wagon and they turned and headed toward Bridgeport. At the Strat-

ford Avenue exit the defendant took over the driving and, armed with a gun, drove to the Lofton home in Bridgeport where Lofton lived with his wife on the third floor of a house at 187 Deforest Avenue. The defendant's purpose was to "talk with this fellow about paying for my tires." The defendant parked his wife's car on the street in front of the house. Lofton was sitting on the porch talking to another resident of the house. He had a full cast on his right leg to the knee and appeared to be upset and in shock. The defendant got out of his car and, standing on the sidewalk, shouted to Lofton: "Why did you cut my tires?" and, "You messed up my car." Lofton answered: "You had my wife." Lofton stood up, reached in his pocket for his door key and turned toward the door leading to his apartment, with his back to the defendant. The defendant pulled a gun from his pocket and shot Lofton twice in the back and once in the wrist. Lofton fell with one foot on the step at the open door leading to his apartment and died from the gunshot wounds at 6:50 a.m. on the next day, September 2, 1968.

The evidence before us does not disclose the whereabouts or actions of Lofton's wife following the incident at the parking lot, or how or when Lofton went there or returned home.

It is the defendant's claim that he knew that Lofton habitually carried a gun and that he was fearful that Lofton was reaching for a gun when he in fact reached for his key. There was evidence that Lofton did own two guns for which he had a permit. There was also evidence that his wife had taken possession of both guns following an argument on the preceding Friday, had shown them to the defendant and then hid them, and had told the defendant, on the day of the shooting, that they were still hidden.

The argument is made that the defendant had been told by Lofton's wife that Lofton was a person of violent disposition and that the incident at the parking lot, the anger over the damage to his tires and the fear that Lofton was reaching for a gun when he reached for his key all combined to create extenuating circumstances which, while not sufficient to justify a shooting in self defense, added up to a shooting "in the heat of passion" so that the killing amounted to manslaughter rather than second-degree murder. In advancing this argument, defense counsel has done his best for the defendant but the argument is ineffectual. The evidence before the jury abundantly supported a verdict of murder in the second degree.

Murder in the second degree is an unlawful homicide with malice aforethought. *State* v. *Kurz,* 131 Conn. 54, 60, 37 A.2d 808. From the facts recited, it is clear that the jury were fully justified in concluding that this was an unlawful homicide with malice aforethought. *State* v. *Miller,* supra, 627. We need not encumber this opinion with the oft-repeated definition of malice aforethought so recently stated in *State* v. *Miller,* supra.

The remaining assignment of error is the denial of the defendant's motion to have the jury polled as to their verdict. The verdict was taken in the following fashion: "The Court: Sheriff, is the jury ready to report? The Sheriff: Yes, your Honor. The Court: The record may note that the accused is here. Bring them in, Sheriff. (The jury returned to the courtroom at 4:50 p.m.) The Court: Mr. Clerk, will you take the attendance please? The Clerk: Ladies and gentlemen of the jury, will you please answer as your names are called, stand and remain standing? (The jury attendance was taken) The Clerk: Ladies and gentlemen of the jury, have

you agreed upon a verdict? The Jury (In unison): We have. The Clerk: James Shelton, stand up. Look upon the foreman. Mr. Foreman, look upon the accused. What say you, is the prisoner at bar guilty or not guilty of the crime whereof he stands indicted for? The Foreman: Guilty. The Court: Mr. Foreman, when I instructed you as to the possible verdicts, I said that there were four. One was guilty of murder in the first degree; the second was guilty of murder in the second degree; the third one was guilty of manslaughter; and the fourth one was not guilty. I am going to have the Clerk inquire of you, and you will announce to him that verdict which you all have unanimously agreed upon. Go ahead. The Clerk: What say you, Mr. Foreman, is the prisoner at bar guilty or not guilty of the crime whereof he stands indicted for? The Foreman: He is guilty of second degree murder. The Court: Verdict may be accepted and recorded. The Clerk: Ladies and gentlemen of the jury, harken to your verdict as accepted and ordered recorded by the Court. You, upon your oaths, do say that the prisoner at bar is guilty of second degree murder. So say you, Mr. Foreman? The Foreman: Yes, I do. The Clerk: And so say you all? The Jury: (In unison) Yes. The Court: Please be seated. Mr. Bundock: Your Honor, may the jury be polled? The Court: Motion is denied. Mr. Bundock: Exception, your Honor? The Court: Noted."

The defendant would have us abandon our long-established rule that a poll of the jurors in a criminal case is not a matter of right but is a matter resting in the sound legal discretion of the court. "Such a right, under the law and practice of this state, has never been recognized, and there are no considerations of justice, expediency, or security to the pris-

oner, that require its adoption instead of our present practice." *State* v. *Hoyt,* 47 Conn. 518, 533; *State* v. *Tucker,* 146 Conn. 410, 415, 151 A.2d 876. We see no reason for departing from our settled rule especially in the present case in which it is clear that the court exercised its discretion after taking extreme care to ascertain the precise verdict. "The principle affecting the form of a general or partial verdict of 'guilty' is, that as finally rendered and recorded it shall clearly and certainly designate the crime charged in the indictment, for which punishment is to be inflicted." *Rookey* v. *State,* 70 Conn. 104, 108, 38 A. 911.

The defendant was tried on an indictment for first-degree murder. When the jury returned with their verdict following their deliberations they answered, in unison, that they had agreed upon a verdict and, in response to the clerk's question, the foreman announced the verdict to be "guilty". The court then intervened, again recited the four possible verdicts which he had previously told the jury that they might render, and instructed the clerk again to inquire as to their verdict. That inquiry being made, the foreman announced a verdict of guilty of murder in the second degree. The court accepted the verdict and ordered it recorded. Then, in response to the clerk's further inquiry, the jury, in unison, assented that their verdict was that the defendant was guilty of second-degree murder. Thereafter, the motion to poll the jury was made and denied. Thus, unhurried and in unison, the entire panel had announced, in open court and in the presence of the defendant, first that they had agreed upon a verdict and second, what that verdict was. The court did not abuse its discretion in denying the motion to poll the jury.

There is no error.

In this opinion the other judges concurred.