## State of Connecticut *v.* Julian Chetcuti

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued April 5—decision released June 7, 1977

*Clement F. Naples,* assistant public defender, with whom, on the brief, was *Robert G. Hall, Jr.,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Arlen D. Nickowitz,* assistant state's attorney, for the appellee (state).

BOGDANSKI, J.   The defendant, Julian Chetcuti, was indicted by a grand jury of the crime of kidnapping in the first degree in that he abducted a young woman with intent to violate or abuse her sexually, in violation of § 53a-92 (a) (2) (A) of the General Statutes.   Upon a trial to the jury, the defendant was found guilty as charged.   From the judgment rendered on the verdict, the defendant has appealed to this court.

The issues which the defendant has briefed on the appeal include the following:   (1) that § 53a-92 is in violation of the constitution of the state of Connecticut because of vagueness and uncertainty, and of the constitution of the United States because it places the sentencing power in the hands of the prosecutor; (2) that the court erred in failing to grant his motion to suppress; (3) that it erred in failing to charge as requested; (4) that it erred in denying his motion to set aside the verdict; and (5) that it erred in failing to poll the jury.

The defendant claims that the statute designating the crime of kidnapping in the first degree[1] is unconstitutional in that it is vague and uncertain, extends excessive discretion to the prosecuting attorney, and can be applied to other criminal activity to which it is only incidental and subsidiary.

"A statute . . . which forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. *Baggett* v. *Bullitt,* 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377; *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322. Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Mitchell* v. *King,* 169 Conn. 140, 142-43, 363 A.2d 68; *State* v. *Hurliman,* 143 Conn. 502, 509, 123 A.2d 767. It is also recognized, however, that laws may be general in nature so as to include a wide range of prohibited conduct. The constitution requires no more than a reasonable degree of certainty. *United States* v. *Petrillo,* 332 U.S. 1, 7-8, 67 S. Ct. 1538, 91 L. Ed. 1877. "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when

---

[1] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when: (1) His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function.

(b) Kidnapping in the first degree is punishable as a class A felony."

measured by common understanding and practices."
*Jordan* v. *De George*, 341 U.S. 223, 231–32, 71 S. Ct.
703, 95 L. Ed. 886.

The kidnapping statute makes criminal the abduction of another person with intent to violate or abuse that person sexually. Section 53a-91 defines "abduct" to mean to restrain a person with intent to prevent his liberation by either secreting or holding him in a place where he is not likely to be found, or by using or threatening to use physical force or intimidation.

The language of the statutes is clear and does not lend itself to any equivocal interpretation. It sufficiently warns the ordinary person in clear and concise terms of the prohibited conduct intended. There is no merit to this claim.

Similarly, the claim that § 53a-92 (a) (2) (A) is unconstitutional in some manner because the prosecuting attorney can choose to prosecute either under the kidnapping statute or under certain other statutes is also without merit. The right of a prosecuting attorney to choose from two or more criminal statutes for prosecution is well established. And where criminal statutes overlap, the state is entitled to choose from among them so long as its action does not discriminate against any class of defendants. *Yick Wo* v. *Hopkins*, 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; *United States* v. *Smith*, 523 F.2d 771, 780 (5th Cir.); *United States* v. *Ruggiero*, 472 F.2d 599 (2d Cir.), cert. denied, 412 U.S. 939, 93 S. Ct. 2772, 37 L. Ed. 398. We have always held that prosecutors have broad discretion in determining what crime or crimes to charge in any particular situation. *State* v. *Villafane*, 171 Conn. 644, 664, 372 A.2d 82; *State* v. *Townsend*, 167

Conn. 539, 554, 356 A.2d 125. Moreover, where the elements of two or more distinct offenses are combined in the same act, prosecution for one will not bar prosecution for the other. *State* v. *Dubina,* 164 Conn. 95, 100, 318 A.2d 95; *State* v. *Fico,* 147 Conn. 426, 430, 162 A.2d 697.

The defendant has assigned error directed at the court's charge in two respects: (1) the failure to charge on the elements of the additional crimes of assault in the first degree, assault in the second degree and sexual contact in the first degree, and (2) the failure to charge on the significance of the abduction as being incidental to the commission of some other crime.

It is improper to instruct the jury about each and every offense that the evidence suggests an accused may have committed in the course of the crime charged. *State* v. *Cari,* 163 Conn. 174, 183, 303 A.2d 7; *State* v. *Brown,* 163 Conn. 52, 62, 301 A.2d 547. An exception does exist where a lesser included offense is involved. To require an instruction on a lesser included offense, however, the lesser offense must not require any element which is not needed to commit the greater offense. See *Waker* v. *United States,* 344 F.2d 795, 798 (1st Cir.).

The crimes of assault in the first degree, assault in the second degree and sexual contact involve elements not necessary to establish the crime of kidnapping in the first degree. They do not, therefore, fall within the established principle that "the lesser offense must not require some additional element not needed to constitute the greater offense." Ibid. The court properly refused to charge as claimed.

The defendant next claims that where the abduction and restraint of a victim are merely incidental to some other underlying offense, such as sexual assault, the abduction and restraint cannot form the basis for a verdict of guilty on a charge of kidnapping.[2] He claims also that whether the abduction and restraint were merely incidental to some other underlying crime is a question of fact for the jury to decide, citing *People* v. *Lombardi,* 20 N.Y.2d 266, 229 N.E.2d 206, and *People* v. *Levy,* 15 N.Y.2d 159, 204 N.E.2d 842, cert. denied, 381 U.S. 938, 85 S. Ct. 1770, 14 L. Ed. 2d 701.

Those same claims were raised in *State* v. *Dubina,* 164 Conn. 95, 318 A.2d 95, where the defendant was charged with the crimes of kidnapping, rape and indecent assault. On appeal we stated (p. 100): "The question whether the detention had been merely 'incidental' to the rape was [under appropriate instructions from the court] for the jury to decide." We noted, however, that because the defendant failed to request a charge to that effect, we were unable to say that the defendant's restraint of the victim in that case could not fall within the purview of the kidnapping statute.

In any event, the legislature of this state has seen fit not to merge the offense of kidnapping with sexual assault or with any other felony. Nor has the legislature imposed any time requirement for the restraint, nor any distance requirement for the asportation to constitute the crime of kidnapping. In view of the express terms of the statute and the

[2] Decisions of other state courts on this subject have been collected and discussed elsewhere. See annot., 43 A.L.R.3d 699; Parker, "Aspects of Merger in the Law of Kidnapping," 55 Cornell L. Rev. 527.

fact that the defendant's requests to charge[3] were not an accurate statement of the law of this state; *State* v. *Dubina,* supra; *State* v. *Green,* 172 Conn. 22, 25, 372 A.2d 133; the court was not in error in denying the requests to charge.

In another assignment of error the defendant has challenged the denial of his motion to suppress a quantity of hair seized in a search of his automobile. The evidence reveals that hair found on the seat of the defendant's automobile while it was parked near the victim's house was in plain view of Detective Joseph Falzetti when he arrived at the scene. Objects in the plain view of an officer who has a right to be there are subject to seizure without a warrant and may be introduced in evidence. *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067; *State* v. *Krause,* 163 Conn. 76, 82–83, 301 A.2d 234.

The defendant also moved to suppress certain items seized by the police from his apartment. The evidence discloses that those items were obtained with the defendant's consent.[4] The record further shows that the defendant was given *Miranda* warnings several times prior to the seizures, that no threat or use of force was used, and that no promises were made to him.

---

[3] The defendant requested the court to charge as follows:

"1. That the application of the kidnapping statute should be limited to kidnapping in the conventional sense in which that term has now come to have acquired meaning. Further that the detention or asportation inevitably occurring during the immediate act of commission of such a crime as rape should not form a basis for a separate crime of kidnapping. *People* v. *Lombardi,* 20 N.Y.2d 266 . . . 229 N.E.2d 206; *People* v. *Levy,* 15 N.Y.2d 159 . . . 204 N.E.2d 842 . . . cert. denied, 381 U.S. 938, 85 S. Ct. 1770, 14 L. Ed. 2d 701."

[4] The defendant suggested that Detective Falzetti search his room and gave the detective the key to his room.

The question whether a consent to search was made voluntarily is a question of fact to be determined from the totality of all the circumstances. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 232–33, 93 S. Ct. 2041, 36 L. Ed. 2d 854. There is no support in the record for the claim that the defendant's consent to the search of his room was the result of duress or coercion. The court did not err in finding that the consent was voluntarily given.

The defendant has assigned error in the court's denial of the defendant's request to poll the jury. This court has previously ruled that the decision to poll a jury is a matter of discretion with the trial court. *State* v. *Marshall,* 166 Conn. 593, 598, 353 A.2d 756; *State* v. *Shelton,* 160 Conn. 360, 364, 278 A.2d 782; *State* v. *Tucker,* 146 Conn. 410, 415, 151 A.2d 876. No reason has been shown for us to depart from that ruling.

The defendant's final claim concerns the denial of his motion to set aside the verdict because of insufficient evidence to support guilt of the crime of kidnapping in the first degree. The issue in such a claim is whether the jury could reasonably have concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411. There is no distinction between direct and circumstantial evidence so far as probative force is concerned; *State* v. *Benton,* supra; *State* v. *Cari,* 163 Conn. 174, 179, 303 A.2d 7; and the evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Benton,* supra, 406.

The following facts were before the jury: In April, 1974, the victim was a student at Stamford

High School, aged 16, and resided with her family in the city of Stamford. On the evening of April 25, 1974, she left home about 9:10 p.m. to meet her boyfriend at a store six blocks away where he had part-time employment. When she got there she found the store had already closed and started to walk back home. On her way back, an automobile operated by the defendant drove past her, stopped, backed up and stopped alongside of her. When the defendant called out to her to come to his automobile she started to walk faster. The defendant got out of his car and proceeded to grab her by the hair and collar of her coat. When she started to resist and scream, he stated, "Bitch, be quiet," and began to strike her. He then forced her toward his car and struck her head against his automobile. She continued to resist and fight back as he attempted to get her into the car. He finally forced her inside the car. He continued to strike her head against the mound of the floor of the car as she continued to scream, kick and resist. He held her by the hair as he drove a short distance and then stopped. He forced her out of the car by pulling her hair and collar. He then ordered her to say that she was his girlfriend in the event they met anyone, or he would kill her. He then forced her into a house and up into a room on the second floor. In the room he pushed her onto a bed and started to take her clothes off. She continued to resist and struggle but he succeeded in removing all of her clothes. The defendant then removed his own clothing. While he was attempting to have intercourse, there was a knock on the door of the room. When she yelled for help, he struck her head against a radiator rendering her unconscious. The person at the door was subsequently found to be a friend of the defendant who knocked because he heard a

girl cry for help. The defendant then ordered her to get dressed, told her that his name was Mike, and ordered her not to tell the police what had happened. She told him she would say nothing and that she would say instead that she had sustained her injuries by being struck by an automobile. The defendant then agreed to drive her to the vicinity of her home. Before leaving the room she brushed her hair and threw a quantity of it into a paper bag next to a dresser. The defendant dropped her off at a location some distance from her house and followed her in his car. As she arrived near her home, she saw her father and boyfriend outside the house and immediately pointed to the defendant as the person who had beat her. The boyfriend went to the defendant's car, forced him out, and knocked him to the ground.

An off-duty police officer who lived nearby rushed to the scene and was told of what had happened. He arrested the defendant and advised him of his constitutional rights. Shortly thereafter, two other police officers arrived and took the defendant into custody and also advised him of his rights. They took him to police headquarters and then to Stamford Hospital where they took custody of his clothing, including his undershorts. As a result of those events, the victim sustained a deep abrasion on her forehead, bruises on various areas of her shoulders, swollen nose and lips, cuts on both of her hands and the loss of a considerable amount of hair from her head.

Abraham Stolman, chief toxicologist for the state, testified to the presence of blood stains and seminal stains on the victim's panties, seminal stains on the defendant's undershorts, blood on one corner of a bedspread and seminal stains on the sheet taken

from the defendant's room. He testified that the clump of hair taken from the defendant's automobile and the hair recovered from the defendant's room had exactly the same characteristics as the victim's hair.

On the evidence presented, the trial court did not err in denying the motion to set aside the verdict on grounds of insufficient evidence.

There is no error.

In this opinion the other judges concurred.