STATE OF CONNECTICUT *v.* DAVID JOHNSON
(7401)

STATE OF CONNECTICUT *v.* DIANE MCINTOSH
(7405)

O'CONNELL, NORCOTT and LANDAU, Js.

Argued December 3, 1991—decision released February 4, 1992

*Denise Dishongh,* special public defender, with whom, were *Louis S. Avitabile,* special public defender, and, on the brief, *Joshua R. Kricker,* special public defender, for the appellants (defendants).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *John M. Connelly,* state's attorney, and *Marcia Smith,* senior assistant state's attorney, for the appellee (state).

LANDAU, J. In a recursion to this court,[1] the defendants appeal, after a jury trial, from a conviction of possession of heroin in violation of General Statutes

[1] In our original decision in this case, *State* v. *Johnson,* 22 Conn. App. 40, 576 A.2d 171 (1990), rev'd, 219 Conn. 557, 594 A.2d 933 (1991), we concluded that the trial court improperly denied the defendants' motion to suppress because the probable cause underlying the search warrant was stale at the time it was executed and the evidence seized and that this court could not conclude that the police could have harbored an objectively reasonable belief in the existence of probable cause at the time the warrant was issued to justify the application of the good faith exception to the exclusionary rule. The Supreme Court reversed, concluding that the warrant adequately established probable cause and that the information on which the warrant was obtained was not stale, and remanded the case to this court for a determination as to the remaining issues.

§ 21a-279 (a)[2] and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).[3] They claim that (1) the evidence presented at trial was insufficient to prove beyond a reasonable doubt that the substance at issue was heroin, (2) their right to due process and equal protection of the laws was violated by the methodology employed by the state to test the seized material, (3) the trial court improperly refused to strike expert testimony as unreliable hearsay, (4) the trial court improperly denied their motion for judgment of acquittal on uncharged theories of liability and their postverdict request that the jurors be polled as to an element of the crime charged, and (5) the trial court improperly denied their postverdict motion for a court-appointed expert. We affirm the judgment of the trial court.

The relevant facts are fully set forth in *State* v. *Johnson,* 22 Conn. App. 40, 576 A.2d 171 (1990), rev'd, 219 Conn. 557, 594 A.2d 933 (1991), and need be only briefly repeated here. The Waterbury police, acting on information from a known confidential informant that drugs were being sold from the defendants' apartment, set up a controlled buy. The informant entered the apartment with $30 and returned to the police with a packet containing a white powder that field-tested positive for cocaine. The police obtained and executed a search and seizure warrant based on this information. The search produced four packets of drugs and various drug paraphernalia.

I

In the defendants' first claim, they assert that the evidence presented at trial was insufficient to prove

[2] General Statutes § 21a-279 (a) provides that a person may be imprisoned for possession or control of any narcotic substance.

[3] General Statutes § 21a-267 (a) provides in relevant part: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240 . . . . Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor.

beyond a reasonable doubt that the material seized contained heroin. We disagree.

"The issue of sufficiency of evidence and its appropriate standard of review have been analyzed countless times by both this court and our Supreme Court." *State* v. *Iovieno,* 14 Conn. App. 710, 712–13, 543 A.2d 766 (1988). We employ a two part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. *State* v. *Owens,* 25 Conn. App. 181, 192, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991). We then decide whether, on the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett,* 218 Conn. 766, 770–771, 591 A.2d 1225 (1991).

The substance seized was tested by both the state laboratory and an independent examiner retained by the defendant. Two experts presented the jury with conflicting evidence regarding the issues of extraction and detection of the substance. Charles N. Reading, the toxicologist who oversaw the testing at the state laboratory, testified that the substance contained heroin. Kevin Miller, the defendants' expert on chemical analysis, testified that the substance did not contain heroin, but rather acetyl codeine. Miller testified that the procedure he employed could extract and detect even the most minute traces of heroin. Reading disagreed with Miller's conclusion regarding the extraction capabilities of the procedure he employed, and testified that Miller's procedure was not capable of adequately extracting heroin from the samples

obtained. Reading further testified that any amount of heroin that might have been extracted from the sample was hydrolyzed to the point that it was no longer heroin.[4]

It is the prerogative of the jury to assess conflicting evidence in order to determine what and whom to believe. *State* v. *Reyes,* 19 Conn. App. 179, 191, 562 A.2d 27 (1989). The evaluation of testimony is the sole province of the trier of fact. We do not retry the case. *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 429, 494 A.2d 624 (1985). The jury was free to choose between Reading's testimony and Miller's testimony. See *State* v. *Collette,* 199 Conn. 308, 315, 507 A.2d 99 (1986); *State* v. *Cofone,* 164 Conn. 162, 165, 319 A.2d 381 (1972). The jury verdict indicates that it chose to credit the testimony of Reading. After a review of the record, we conclude that there was sufficient evidence presented at trial for the jury to find that the seized material contained heroin.

## II

The defendants' second claim is that they were denied equal protection and due process of the law when they were convicted on the basis of a test less reliable and specific than that required by law for workplace drug testing. Central to this claim is General Statutes § 31-51u, which provides in relevant part: "No employer may determine an employee's eligibility for promotion . . . solely on the basis of a positive urinalysis drug test result unless . . . (3) such positive test result was confirmed by a third urinalysis drug test which was separate and independent from the initial test, utilizing a gas chromatography and mass spectrometry methodology or a methodology which has been determined by the commissioner of health services to be as reliable or more reliable than the gas chromatography and mass spectrometry methodology." Here, the state did not

[4] To hydrolyze is to alter or to change the molecular configuration. Hydrolyzed heroin becomes morphine.

use the gas chromatography and mass spectrometry methodology in testing the sample; rather, it utilized thin layer chromatography, ultraviolet spectrophometry and chemical tests to identify the heroin.

The defendants argue that the enactment of General Statutes § 31-51u creates an arbitrary and irrational classification, mandating the use of gas chromatography and mass spectrometry in workplace drug testing but not requiring such testing in criminal prosecutions. We disagree. To implicate the equal protection clauses under the state and federal constitutions it is necessary that the statute, or action, treat differently persons standing in the same relation to it.[5] *Franklin* v. *Berger,* 211 Conn. 591, 596, 560 A.2d 444 (1989). Persons subject to the provisions of General Statutes § 31-51u and criminal defendants are not similarly situated. Individuals within the former category face employment sanctions on the bases of urinalyses; individuals in the latter category face criminal conviction on the bases of, inter alia, the results of analyses of substances. Because persons facing criminal sanctions are not similarly situated with those subject to § 31-51u, this claim does not implicate the equal protection clause.

The defendants' due process claim also fails. They claim that the testing methodology used by the state to test the heroin was less reliable than the methodology described in § 31-51u. Again, the testimony of the expert witnesses differed with regard to the reliability of the tests performed. Reading's testimony that thin layer spectrometry is recognized as an ideal technique for drug screening; see 22B Journal of Chromatography Library, "Chromatography: Fundamentals and Applications of Chromatographic and Electrophoretic Methods"; does not imply that the testing methods

---

[5] The equal protection clauses of the state and federal constitutions have the same meaning and limitations permitting simultaneous discussion. *Franklin* v. *Berger,* 211 Conn. 591, 594 n.5, 560 A.2d 444 (1989).

employed by the state were not reliable. Reading specifically stated that, in his opinion, the state's testing methods were reliable. The jury saw fit to believe Reading, the state's expert witness. It is within the province of the trier of fact to assign as much weight to a witness' testimony as it sees fit. *State* v. *Girolamo,* 197 Conn. 201, 215, 496 A.2d 948 (1985). We refuse to disturb the result.

## III

The defendants' third claim is that the trial court improperly denied their motion to strike Reading's testimony as unreliable hearsay because he did not personally perform the tests to which the materials were subjected.[6] We disagree.

The identical issue was addressed by the Supreme Court in *State* v. *Reardon,* 172 Conn. 593, 376 A.2d 65 (1977), cert. denied, 481 U.S. 1020, 107 S. Ct. 1903, 95 L. Ed. 2d 509 (1987). In *Reardon,* the defendant objected to the testimony of the state toxicologist on grounds of hearsay.[7] Specifically, the defendant objected to the testimony regarding the contents of the tested substances on the basis that the toxicologist who was testifying did not actually perform the tests. Id., 595. The court concluded that the trial court properly admitted the testimony because it contained sufficient indicia of reliability and trustworthiness and that it was reasonably necessary to except such testimony from the hearsay rule. Id., 597–98. This rule was augmented in *State* v. *Cosgrove,* 181 Conn. 562, 584, 436 A.2d 33 (1980), where the court concluded that expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion.

---

[6] The defendants couch their claim in language amounting to a denial of due process. Their constitutional argument has not been briefed at all and is, therefore, deemed abandoned. *State* v. *James,* 211 Conn. 555, 588, 560 A.2d 426 (1989).

[7] The toxicologist testifying in *Reardon* was the same Charles N. Reading who testified here.

The defendants do not challenge the rule set forth in *State* v. *Reardon*, supra. They do, however, attempt to distinguish *Reardon* on the basis that, here, Reading testified that he did not personally observe the chemist perform the tests at issue but that he merely reviewed the results of the completed tests. We conclude that the significant facts in the instant case are not distinguishable from those relied on by the *Reardon* court. Here, as in *Reardon*, Reading testified that he had personal knowledge of both the identity of the tested material and the tests performed. He also testified that the tests were conducted under his direction and supervision, that he was present when the tests were conducted and that he personally observed the test results. The trial court, therefore, properly refused to strike the challenged testimony.

## IV

The defendants next claim that the trial court improperly denied (1) their motion for judgment of acquittal on uncharged theories of liability and (2) their post-verdict request that the jury be polled as to its finding that the substance at issue was heroin. The defendants assert that these denials deprived them of their constitutional rights of due process. We disagree.

## A

In count one of the substitute information, the defendant was charged with possession of narcotic substances, to wit: heroin, in violation of General Statutes § 21a-279 (a). In its case-in-chief, the state presented evidence that the defendant did in fact possess heroin, but presented no evidence supporting the conclusion that he possessed any narcotic substance other than heroin. The defendant filed a motion for judgment of acquittal, pursuant to Practice Book § 883, as to all substances for which the state had failed to produce evidence. The trial court denied the motion.

Our rules of practice limit a motion for judgment of acquittal to charged offenses or to offenses deemed to be lesser included offenses. Practice Book § 883. Thus, a judgment of acquittal may be rendered only as to a charged offense or a lesser included offense; it cannot be entered as to an offense never charged. Practice Book § 883 provides that "[a]fter the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal *as to any principal offense charged and as to any lesser included offense* from which the evidence would not reasonably permit a finding of guilty." (Emphasis added.) Because motions for judgment of acquittal apply only to charged offenses or offenses that are deemed to be lesser included offenses of the charged offenses, the trial court properly refused to grant the defendants' motion for judgment of acquittal as to uncharged offenses. See Practice Book § 883.

## B

After the jury returned its verdict, the defendants requested that the jury be polled both as to the verdict and as to whether each juror found beyond a reasonable doubt that the substance was heroin. The trial court permitted the former and refused the latter. We agree with the propriety of the trial court's actions.

After the denial of the judgment of acquittal on substances other than heroin, the defendants presented evidence that the material found in the defendants' apartment was not heroin but was another opium derivative, acetyl codeine. Both experts testified that acetyl codeine and heroin, or diacetyl morphine, are derived from opium and both are narcotic substances.

The defendants argue that because this testimony, in conjunction with the trial court's instructions in which it referred to the offense of possession of a nar-

cotic substance and stated that the defendants were charged with possession of a narcotic substance, made it possible for the jury to convict the defendants even if it did not find that the defendants possessed heroin, the jurors should have been individually asked whether each of them had concluded that the substance was heroin. We disagree.

The jury was properly instructed that it must find that the defendants possessed heroin in order to convict them of the offense charged in count one of the informations. Prior to trial, the jurors were instructed that the defendants were charged with possession of heroin. During the final charge, the jury was twice instructed that the defendants were charged with possession of heroin. They were charged as to the presumption of innocence and the state's burden of proving each and every element of the offense beyond a reasonable doubt. They were instructed that they had to resolve the conflicting expert testimony.[8]

After a verdict has been returned and before the jury has been discharged, the jury may be polled at the request of any party or on the judicial authority's own motion. A poll of the jurors in a criminal case in not a matter of right, but one that rests within the sound discretion of the trial court. *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d. 606 (1984). We read this as continuing the discretionary rule which has long been the law in this state. See, e.g., *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Marshall,* 166 Conn. 593, 598, 353 A.2d 756 (1974); *State* v. *Shelton,* 160 Conn. 360, 363–65, 278 A.2d 782 (1971); *State* v. *Tucker,* 146 Conn. 410, 415, 115 A.2d 876 (1959); *State* v. *Hoyt,* 47 Conn. 518, 533–34 (1880).[9]

---

[8] The court was referring to the testimony regarding the content of the seized substance.

[9] Similarly, the Connecticut rules of practice provide for interrogatories in civil cases. See Practice Book § 312. No parallel provision exists, however, for criminal cases.

The jurors were individually polled as to the verdict. Each juror was asked whether the defendants were guilty of unlawful possession of heroin.[10] Each juror responded affirmatively. Inherent in their affirmative responses is the belief that the substance possessed by the defendant was heroin. Absent a fair indication to the contrary, it is presumed that jurors follow the instructions of the court. *State* v. *Rodriguez,* 210 Conn. 315, 333, 554 A.2d 1080 (1989).

On the basis of a review of the evidence, the instructions and the polling of the jurors as to their verdict, the failure of the trial court to poll the jurors on the individual element of the crime was not an abuse of discretion.

## V

The defendants' final claim is that the trial court improperly denied their postverdict motion for appointment of an independent expert to test the substance at issue. The defendants rely on Practice Book § 881[11] and the inherent power of the trial court. The jury verdict was returned on April 26, 1988. The defendants' motion was filed on May 10, 1988, two weeks after the verdict was returned. It was heard on May 26, 1988, and denied by the court on June 21, 1988, almost two months after the verdict was returned. The trial court concluded that the "record legally supports the jury verdict rendered." It is clear that by this time the trial had been concluded, the issue regarding the identity of the substance had been settled by the jury, and the

---

[10] Specifically, the court clerk asked each juror: "In the case of [*State* v. *Johnson* or *State* v. *McIntosh*], as to the first count of the amended substitute information charging the defendant . . . with the crime of possession of a narcotic substance, to wit, heroin, in violation of General Statutes § 21a-279 (a), is it your verdict that the defendant is guilty?"

[11] Practice Book § 881 in relevant part provides: "Whenever the judicial authority deems it necessary, on his own motion he may appoint any expert witnesses of his own selection."

factfinders no longer were available. The defendants' motion amounted to no more than an attempt to relitigate the issue of the identity of the seized substance. The trial court properly denied the defendants' motion.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[12] We note that the trial court, in denying the request, relied on the fact that "[t]he defendants presented no postverdict evidence in support of any of the claims raised by these motions." Although this statement does not accurately address the defendants' burden regarding such a motion, the fact that the trial court reached the correct conclusion through an incorrect route will not invalidate an otherwise correct ruling. See *Port Clinton Associates* v. *Board of Selectmen,* 217 Conn. 588, 604–10, 587 A.2d 126 (1991).