# STATE OF CONNECTICUT *v.* JOSE LOPEZ
## (AC 16923)

Spear, Sullivan and Spallone, Js.

Argued December 14, 1998—officially released March 9, 1999

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jose Lopez, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit first degree assault in violation of General Statutes §§ 53a-48 (a) and 53a-59. He claims that (1) the trial court improperly denied as untimely defense counsel's request to poll the jury and (2) the evidence was insufficient to support the conviction. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On July 9, 1994, Guy Guyton was working in the Union Street area of Bristol as a confidential informant for the Bristol police department. Prior to being sent to Union Street, Guyton was searched and fitted with a body microphone. In the area of 159 Union Street, Guyton approached Antonio Grayer in an attempt to buy narcotics. Grayer indicated that he did not have any narcotics. The defendant then approached Guyton, and Guyton asked if he could buy narcotics. The defendant did not respond. Guyton continued walking and encountered Derek Smith, whom he had known since 1992. Guyton again tried to purchase narcotics but was unsuccessful.

As Guyton began to leave the area, Virgilio Santiago waved to him to come over. As Guyton walked toward Santiago, Santiago was called over to meet with Smith, Grayer and the defendant. The four men huddled, talking for approximately two minutes. Santiago then motioned for Guyton to come over. Guyton and Santiago walked to an apartment building at 159F Union Street, which they entered. Guyton asked Santiago if he had any drugs and if he had change for a $20 bill.

Santiago stated that he did not have any drugs, but that he was waiting for someone to bring drugs to him. Santiago looked out the door and said that the person for whom he was waiting was on the way.

The door of the building opened and Smith, followed by Grayer and the defendant, entered. Smith's face was partially obscured by a towel draped over his head. The four men began to hit and kick Guyton. Smith hit Guyton with a wheel from a bicycle that was in the hallway. Guyton was able to pull the towel from Smith's face and to grab the bicycle wheel from him. During the assault, Smith said, "Let's kill this motherfucker." A young boy came to the door and the four men ran out. The entire assault was recorded by the body microphone and transcribed. The transcript was admitted into evidence as a full exhibit.

Shortly thereafter, Detective David Carello of the Bristol police department arrived. Guyton was taken outside two or three minutes later and he identified Santiago and Grayer as his assailants. Smith was not present, but Guyton told the detective that "Derek" had assaulted him also. Guyton was unable to identify the defendant as his assailant at that time. Guyton was taken to the hospital, suffering from a broken finger, two broken ribs and multiple cuts and bruises.

While at the hospital, Carello remembered seeing the defendant and Santiago walking away from the apartment building when he arrived. Since Guyton had told him that there were others involved in the assault, but that he could not remember who they were, Carello returned to the police department and prepared an array of photographs that included a picture of the defendant. Carello returned to the hospital and showed Guyton the photographic array. Guyton identified the defendant as one of his assailants.

The defendant was subsequently charged with attempted murder in violation of General Statutes §§ 53a-8, 53a-49 and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and conspiracy to commit assault in violation of General Statutes §§ 53a-48 (a) and 53a-59. After a jury trial, in which the defendant was tried together with codefendants Grayer and Smith, the defendant was found guilty of conspiracy to commit assault and not guilty of the remaining counts. This appeal followed.

I

The defendant first claims that the trial court improperly denied his request to poll the jury. We disagree.

Certain additional facts are necessary to our resolution of this claim. During jury deliberations, the trial court received a note from the jury indicating that it had reached a verdict on eleven of the twelve counts. The trial court stated that it intended to call the jury out, receive the eleven verdicts and proceed from there. All parties agreed to this proposed course of action. The jury was brought into the courtroom and the verdicts were read into the record. All counts against Grayer were disposed of. The court then proceeded with the counts against the defendant. The following colloquy occurred:

"The Clerk: Mr. Foreperson, are you agreed upon a verdict in the case of the *State of Connecticut* v. *Jose Lopez* in docket number CR94-87691?

"[The Foreperson]: Yes.

"The Clerk: Would the defendant please rise?

\* \* \*

"The Clerk: On the fourth count charging the accused with the crime conspiracy to commit assault in the first

degree, in violation of Connecticut General Statutes §§ 53a-48, 53a-59 (a) (1) and 53a-59 (a) (4), do you find the defendant guilty or not guilty?

"[The Foreperson]: Guilty.

"The Court: The verdict is accepted and ordered recorded.

"The Clerk: Ladies and gentlemen of the jury, listen to your verdict as accepted by the court and ordered recorded. You, upon your oath, do say that . . . on the fourth count, charging the defendant with the crime of conspiracy to commit assault in the first degree, he is guilty. So say you all?

"[The Jurors]: Yes.

"The Court: Affirmative response from each of the jurors. Next case."

After the jury's verdict against Derek Smith was recorded, the trial court sent the jury to the jury room to continue deliberations on the remaining count against Grayer. Shortly thereafter, the judge recalled the jury to give them further instructions on the remaining count. The judge stated, "I am going to give you some additional instructions that are helpful in cases when juries fail to agree. I will ask you to continue deliberating on the third count in the case of *State* v. *Grayer.* That will give me more time to chat with you when you've finally concluded the case, and you're still, of course, not to discuss the case—well, I suppose technically, you might be able to discuss *State* v. *Lopez* and *State* v. *Smith,* and not discuss *State* v. *Grayer.*" When the court had finished instructing the jury, counsel for the defendant requested that the jury be polled on the charges against the defendant. The trial court denied the request, concluding that the request was untimely made.

Prior to October 1, 1995, Practice Book § 869 provided that "[a]fter a verdict has been returned and before the jury have been discharged, the jury *may* be polled at the request of any party . . . ." (Emphasis added.). Since as early as 1880, our Supreme Court has consistently held that the request to poll the jury rests in the sound discretion of the trial court. See, e.g., *State* v. *Tirado*, 194 Conn. 89, 95, 478 A.2d 606 (1984); *State* v. *Tucker*, 181 Conn. 406, 420, 435 A.2d 986 (1980); *State* v. *Chetcuti*, 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Marshall*, 166 Conn. 593, 598, 353 A.2d 756 (1974); *State* v. *Shelton*, 160 Conn. 360, 363–65, 278 A.2d 782 (1971); *State* v. *Tucker*, 146 Conn. 410, 415, 151 A.2d 876 (1959); *State* v. *Hoyt*, 47 Conn. 518, 533–34 (1880). Since October 1, 1995, Practice Book § 869, now § 42-31, has provided that "[a]fter a verdict has been returned and before the jury have been discharged, the jury *shall* be polled at the request of any party . . . ." (Emphasis added.). The defendant argues that the change from "may be" to "shall" was made so that what was previously discretionary now implicates the defendant's state and federal constitutional right to a unanimous jury verdict. We decline to adopt this reasoning.

Prior to the October 1, 1995 revision, the trial court had the discretion to poll the jury upon the timely request by the defendant. *State* v. *Villanueva*, 44 Conn. App. 457, 462, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997). We interpret the 1995 revision as eliminating the discretion given to the court upon the defendant's timely request to poll the jury. Upon a timely request, the trial court must poll the jury. "A trial court passing upon a motion made pursuant to a mandatory Practice Book rule can exercise no discretion other than in determining whether there is compliance with the rule." *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 51, 478 A.2d 601 (1984). To comply with the rule, however, the defendant's request must

be made after a verdict has been returned, but before the jury has been discharged. This is not the case here.

The defendant's request to poll the jury was made after the jury had effectively been discharged in this case and the case against codefendant Smith. All counts against the defendant had been resolved and the jury's verdict had been accepted and recorded by the trial court. Furthermore, the jury was sent out of the courtroom to deliberate the remaining count against the codefendant Grayer. It was only after the jury was brought back in for further instructions on that remaining count against Grayer that the defendant in this case made his request to poll the jury. The trial court properly exercised its discretion in determining whether there had been compliance with the rules of practice and properly concluded that the request was untimely made.

Neither our Supreme Court nor this court has considered the denial of a request to poll a jury to be of constitutional magnitude. *State* v. *Shelton*, supra, 160 Conn. 364; *State* v. *Tucker*, supra, 146 Conn. 415; *State* v. *Hoyt*, supra, 47 Conn. 533; *State* v. *Villanueva*, 44 Conn. App. 463. Our Supreme Court has also held that " '[w]hen the jury have openly, deliberately and unanimously assented to the verdict when called on for that purpose, it [affords] all the evidence of unanimity which could reasonably be required.' [*State* v. *Hoyt*, 47 Conn. 518, 533 (1880)].' *State* v. *Tucker*, [supra, 146 Conn. 415]." *State* v. *Tirado*, supra, 194 Conn. 95.

Even if we were to conclude that the trial court improperly determined that the request was untimely made, the defendant has failed to establish the harmfulness of the error. " 'The standard for determining whether a nonconstitutional error is harmless is that [t]he defendant must show that it is more probable than not that the erroneous action of the court affected the

result.' " *State* v. *Delgado*, 50 Conn. App. 159, 168, 718 A.2d 437 (1998). Nothing in the record indicates that any of the jurors expressed discomfort or dissatisfaction with the verdict when read in open court. To the contrary, when asked by the trial court if this was their verdict, all jurors responded affirmatively. Moreover, the lack of prejudice is shown by defense counsel's failure to make any claim at the time of the court's ruling and his failure to raise the denial of his request to poll the jury in his three posttrial motions. The defendant has failed to sustain his burden of proving the harmfulness of the alleged impropriety.

## II

The defendant next claims that the evidence was insufficient to support a conviction of conspiracy to commit assault in the first degree. The defendant argues that the jury did not find him guilty of assault in the first degree, either as a principal or accessory and, therefore, that the evidence must be insufficient to support the conviction of conspiracy to commit assault in the first degree. In the alternative, he argues that if the evidence is sufficient to support the conviction, a new trial must be ordered because the verdicts are logically inconsistent. We are unpersuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but

the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) Id., 489–90.

"To establish the crime of conspiracy . . . [the state must show] that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the

conspirators. . . . While the state must prove an agreement, the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Citations omitted; internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 495–96, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

After a review of the record, we conclude that sufficient evidence existed to support the defendant's conviction of conspiracy to commit assault in the first degree. The jury reasonably could have found that as Guyton began to leave the area, Santiago waved for him to come over. Guyton walked toward Santiago, but Santiago was called over to meet with Smith, Grayer and the defendant. The four men huddled, talking for approximately two minutes. The jury reasonably could have inferred that an agreement or concerted plan of action had been made. Santiago then motioned for Guyton to come over. Guyton and Santiago went into the apartment building at 159F Union Street, and Guyton asked Santiago if he had any drugs. Santiago stated that he was waiting for someone to bring drugs to him. The door to the building opened, Smith, Grayer and the defendant entered, and the four men began to hit and kick Guyton. The jury reasonably could have inferred that the defendant entered into an agreement with Smith, Grayer and Santiago and that the agreement was to lure Guyton into the apartment building and to

assault him. Santiago's efforts to lure Guyton into the apartment building were sufficient to constitute an overt act in furtherance of the conspiracy.

We next turn to the defendant's argument regarding inconsistent verdicts. "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements. Such verdicts are legally inconsistent if the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted." *State* v. *Milner*, 46 Conn. App. 118, 122, 699 A.2d 1022 (1997). In the present case, however, the defendant was convicted of one offense and acquitted of the other.

"[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted; internal quotation marks omitted.) Id., 122–23.

Conspiracy requires proof of an agreement; General Statutes § 53a-48 (a); assault in the first degree does not. General Statutes § 53a-59. The two offenses contain different elements. Therefore, the conviction of conspiracy to commit assault in the first degree is not inconsistent with an acquittal of assault in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.